SUMMERS v. BOND-CHADWELL CO. et al.—145 S. W. (2d) 7.

Middle Section.   May 6, 1939.

Petition for Certiorari Denied Both Parties by Supreme Court, February 3, 1940.

358

Goodpasture & Carpenter, of Nashville, for plaintiff in error.
Jackson & Buckner, of Murfreesboro, for defendant in error.

FAW, P. J. Plaintiff, Mrs. Summers, brought this suit against W. C. Allen, F. H. Harper, Bond-Chadwell Company, a corporation, Industrial Tractor & Equipment Company, a corporation, and M. B. Crotts, to recover $2,500 as damages for personal injuries resulting to her from a collision between an automobile (owned and driven by L. R. Rushton) in which plaintiff was riding, and a road grader and truck.

The road grader was the property of Industrial Tractor & Equipment Company and was attached to the rear of, and being drawn by, a truck owned by Bond-Chadwell Company. F. H. Harper was in the regular employment of Bond-Chadwell Company as a truck driver, and had driven their said truck to the point where the collision occurred.

The collision occurred about one mile north of Murfreesboro on the Nashville-Murfreesboro Highway. The Rushton car, in which

plaintiff was riding, was traveling northward. The occupants thereof were on their way from Florida to their respective homes in the State of Kentucky.

. The Bond-Chadwell Company truck, with the road grader attached as aforesaid, was headed northward, but had stopped, and was not moving, at the time of the collision, which occurred after nightfall (about eight o'clock P. M.) on April 14, 1937.

W. C. Allen was driving a truck of the Tennessee Electric Power Company southward on said highway, and the collision occurred at a time when the truck driven by Allen was passing the road grader. The left side of the Rushton car was sideswiped by the Allen truck, and was practically demolished. There is evidence that the right front of the Rushton car also struck the road grader, but on this point the evidence is conflicting. However, for the purposes of this appeal, we must assume (if that matter is material) that the Rushton car collided with the road grader, as well as the Allen truck.

W. C. Allen is a resident of Rutherford County, and process was served on him in that County and counterpart process issued to Davidson County for the other defendants, and was executed by service on all of them, except M. B. Crotts, who was never summoned, and, before the trial below, the plaintiff voluntarily took a nonsuit as to him.

Upon issues made up in the manner hereinafter stated, the case was tried to a jury, and the jury found the issues between the plaintiff and Bond-Chadwell Company in favor of the plaintiff, and assessed her damages at $1,800; but found the issues in favor of all the other defendants and against the plaintiff.

Bond-Chadwell Company filed a motion for a new trial within thirty days and within the term, which motion was held under advisement by the Trial Judge until the next term, when it was overruled, and thereupon Bond-Chadwell Company "moved in arrest of judgment on the same grounds set forth in the motion for a new trial," which latter motion was likewise overruled, and judgment of the Court for $1,800 and the costs of the cause was then entered in favor of plaintiff and against Bond-Chadwell Company; and it was further adjudged by the Court "that plaintiff's suit be and is hereby dismissed as to all other defendants." The plaintiff did not seek a new trial or except to any of the judgments.

Bond-Chadwell Company reserved exceptions to the action of the Court in overruling its motions for a new trial, and in arrest of judgment and in entering judgment against it, and prayed an appeal in the nature of a writ of error to this Court, which was granted by the Trial Court and perfected by Bond-Chadwell Company.

The plaintiff's declaration on which the case was tried (which is the sole declaration in the record here) was filed on March 3, 1938,

and its averments upon which plaintiff seeks to predicate actionable negligence of the defendants are as follows:

"The Murfreesboro-Nashville public highway in Rutherford County, Tennessee (State Highway No. 1), extends in a general direction north and south, and is a surfaced highway, approximately eighteen (18) feet wide, with macadam or graveled shoulders on either side from three (3) to five (5) feet wide.

"On the night of April 14, 1937, the defendants, F. H. Harper and M. B. Crotts, who were the agents, servants and employees of the defendants corporations, Bond-Chadwell Company and Industrial Tractor and Equipment Company, and who were acting within the scope of their employment and for and on behalf of said corporations, were driving a large truck with a large road grader at the rear and attached thereto, on said highway in Rutherford County, going in a northerly direction. A short distance north of the town of Murfreesboro said defendants, Harper and Crotts, stopped or parked said truck and grader upon the surfaced portion of said highway on the right or east side of the center line of said highway, which truck and grader covered and obstructed a large portion of the east side of said highway. Said truck and grader were parked upon said highway in the nighttime without having any lights or signals on the rear of said truck and grader and without any lights or signals being placed upon said highway to warn the travelling public of said obstruction.

"On said night the plaintiff was also riding in an automobile over said highway, which was being driven by one L. R. Rushton, going in a northerly direction and on the right side of the center line of said highway, and upon approaching or nearing the place where said truck and grader were parked, the defendant, W. C. Allen, was also driving a motor-truck upon said highway, going in a southerly direction, at a rapid and unlawful rate of speed and very near to but on the right or west side of the center line in said highway. The automobile driven by the said Allen and the one in which plaintiff was riding met at or near the place where said truck and grader were parked. On meeting the approaching automobile driven by the said W. C. Allen, the lights on L. R. Rushton' automobile, in which plaintiff was riding, were neutralized, and due to a natural law the vision of the driver and the plaintiff were dimmed to such an extent, on account of the bright lights on the approaching automobile or truck, that the plaintiff and the driver of said automobile, in which plaintiff was riding could not and did not discover said parked truck and grader until within a few feet thereof and too close to bring said automobile to a stop before colliding with said parked truck and grader, and on account of the rapid rate of speed of the approaching truck and the failure of the defendant, Allen, to pull or steer his said truck to the right so as to leave enough space between his said truck

and the parked truck and grader for the driver of the automobile in which plaintiff was riding to pass between said approaching truck and the parked truck and grader, the driver of the automobile, in which plaintiff was riding was forced to choose between a head-on collision with the approaching truck and a collision with the parked truck and grader, the lesser danger being a collision with the parked truck and grader, and as a result of the concurring negligence of the defendants heretofore detailed, the automobile in which plaintiff was riding collided with the rear end or back of said grader, and/or against said approaching truck, thereby throwing plaintiff out of said automobile onto the ground, seriously and permanently injuring her.''

It may be well to say in this connection that there is seemingly much irregularity in the *order of time* in which pleadings were filed below, and this is explained by the record, from which it appears that this suit was first brought against W. C. Allen, F. H. Harper and Bond-Chadwell Company on December 18, 1937, and a declaration (not in the transcript here) was filed by the plaintiff against said three defendants, to which declaration, on January 7, 1938, Bond-Chadwell Company and F. H. Harper filed a plea of accord and satisfaction, as follows:

''Defendants, Bond-Chadwell Company and F. H. Harper, for joint and separate plea to the declaration filed against them and others in the above styled cause, say:

''That while denying liability and believing they were in no way liable to plaintiff, the defendants were willing to buy their peace and on the 26th day of July, 1937, and before the commencement of this action, they compromised and settled the claim of the plaintiff against them, paying the plaintiff and her husband T. C. Summers, jointly, the sum of $250.00 in consideration for which payment the plaintiff jointly with her said husband executed a contract in favor of these defendants, an exact copy of which is filed herewith as exhibit 'A', in which she expressed doubt of her right to recover against them and agreed to dismiss the suit she then had pending against these defendants, and further agreed not to reinstitute the same or institute any suit against these defendants for the alleged damages and to hold harmless these defendants from any and all claims against them by reason of the matters and things set forth in plaintiff's declaration.

''These defendants specially plead said settlement and contract in bar of plaintiff's suit.''

On February 7, 1938, the plaintiff filed a replication to said plea, as follows:

''The plaintiff, for replication to the special plea of settlement or accord and satisfaction filed in this case by the defendants, Bond-Chadwell Company and F. H. Harper, says:

''That this plaintiff was injured in an accident which occurred on or about April 14, 1937, on the Nashville-Murfreesboro Highway in

Rutherford County, and thereafter instituted suit against W. C. Allen, F. H. Harper, Bond-Chadwell Company and Industrial Tractor and Equipment Company for damages.

"This plaintiff was thereafter induced by and through the fraudulent representations of said defendants, F. H. Harper and Bond-Chadwell Company, or their agents, representatives not to sue said defendants, F. H. Harper and Bond-Chadwell Company, for the consideration of $125.00, and agreed to and did take a nonsuit as to said defendants in said case.

"It was represented to the plaintiff and her attorney by said defendants or their agents, representatives and attorneys as a part of the consideration and an inducement to the plaintiff to take a nonsuit and execute a covenant not to sue said defendants F. H. Harper and Bond-Chadwell Company, that the said Industrial Tractor and Equipment Company was in charge and had control of the truck and grader, which were involved in said accident, at the time of said accident, and that one M. D. Crotts were the agent and employee of said Industrial Tractor and Equipment Company and that he was present or in control of the operation of said truck and grader at the time of said accident and injuries entirely upon the said M. D. Crotts and the Industrial Tractor and Equipment Company.

"The said defendants, F. H. Harper and Bond-Chadwell Company, through their agents, representatives and attorneys, represented to the plaintiff and her attorney that they were in possession of the facts, in substance, as hereinbefore detailed, and agreed with the plaintiff and her attorney to cooperate in fixing the liability upon said M. D. Crotts and Industrial Tractor and Equipment Company as an inducement to the procurement of the execution of said covenant not to sue.

"That at the October term of the Circuit Court of Rutherford County said case came on for trial against said Industrial Tractor and Equipment Company et al., when the proof showed and a representative of the Bond-Chadwell Company and F. H. Harper testified in effect that the said Industrial Tractor and Equipment Company was not in charge or control of the operation of said truck and grader at the time of said accident, and that said M. D. Crotts, who was the employee of the said Industrial Tractor and Equipment Company, had no control over the operation of said truck and grader at the time of said accident, which facts as proven by a representative of the Bond-Chadwell Company and F. H. Harper were contrary to and contradictory of the statements of said Bond-Chadwell Company through its agents, representatives and attorneys as an inducement to the execution of said covenant not to sue; that after the proof had been developed on the trial of said case that the said Industrial Tractor and Equipment Company and the said M. D. Crotts had no connection with or control over the operation of said truck and grader

364

at the time of said accident and injuries to this plaintiff, a nonsuit was taken and the case dismissed, and thereafter this suit was instituted against the said F. H. Harper, Bond-Chadwell Company and one W. C. Allen.

"Therefore, this plaintiff avers that the execution of said instrument purporting to be a covenant not to sue said defendants, F. H. Harper and Bond-Chadwell Company, was procured through fraud and deceit on the part of said defendants or their agents, representatives and attorneys, and for the purpose of defeating this plaintiff of her just rights and just cause of action against them for damages, and that the money consideration received by this plaintiff was wholly inadequate to compensate this plaintiff for her injuries, and was not received as full compensation.

"This plaintiff now comes and offers to refund to said defendants the $125.00 paid him (her) as the consideration stipulated in said covenant not to sue, and herewith tenders same into court to be refunded to said defendants so as to place them in the same position as they were before the execution of said instrument, and this plaintiff now prays that said instrument be set aside on the ground that it was procured through deceit and fraudulent representations, and that this plaintiff recover of said defendants her just compensation as set forth in her declaration.

"The plaintiff joins issue on any other statements and averments set forth in the special plea of the defendants which are not hereinbefore fully replied to in this special replication."

On February 17, 1938, Bond-Chadwell Company and F. H. Harper filed a demurrer to the aforesaid replication of the plaintiff, and joined therewith a pleading styled "special plea," which demurrer and "special plea" are as follows:

"Demurrer to Replication

"Comes defendants Bond-Chadwell Company and F. H. Harper and demur to the replication filed by the plaintiff and say that the same is insufficient in law because the money received by plaintiff in alleged accord and satisfaction of her right of action against these defendants and as the compensation stipulated in the covenant not to sue these defendants executed by the plaintiff, was not paid or delivered to the Clerk of this Court with the filing of the said replication.

"Wherefore these defendants ask the judgment of the Court whether they should be required to plead further to said replication.

"Goodpasture & Carpenter,

"Attorneys for Defendants Bond-Chadwell Company and F. H. Harper."

"Special Plea

"Not waiving their foregoing demurrer, but specifically relying

thereon the defendants Bond-Chadwell Company and F. H. Harper for special plea to the replication filed in the above styled cause, say:

"That plaintiff has not actually paid or delivered to the Clerk of this Court the sum of money allegedly paid in accord and satisfaction of plaintiff's alleged claim against these defendants and the amount admittedly received by plaintiff as compensation stipulated in the covenant not to sue these defendants executed by the plaintiff.

"These defendants specially plead said failure of the plaintiff to pay said money into Court, in bar of plaintiff's suit.

"Goodpasture & Carpenter,
"Attorneys for Defendants Bond-Chadwell Company and F. H. Harper."

We may say, in passing, that both the demurrer and the "special plea," supra, seem to tender an issue upon the same proposition (which is *a matter of fact*), viz.: That plaintiff has not paid or delivered to the Clerk of the Court the sum of money paid to her by Bond-Chadwell Company and F. H. Harper. It would seem, therefore, that said demurrer and "special plea" could not be treated as anything more than a *rejoinder* to plaintiff's replication.

On March 3, 1938, the plaintiff, by leave of the Court first obtained, added the names of Industrial Tractor & Equipment ·Company and M. B. Crotts, as parties-defendant to the suit, and withdrew her original declaration, and filed, in lieu thereof, an amended or substitute declaration, which, the record recites, "shall take the place of the original declaration heretofore filed," and which is the declaration on which the case was tried.

On March 11, 1938, it was ordered, by consent, that (1) "the special plea heretofore filed by defendants Bond-Chadwell Company and F. H. Harper, to the declaration as originally filed, stand to the amended or substitute declaration heretofore filed by the plaintiff by leave of Court given March 3, 1938;" (2) "the replication heretofore filed by plaintiff to said special plea ʻof the said defendants, stand to said special plea;" (3) "the demurrer and special plea of said defendants to the said replication of the plaintiff stand to said replication;" ·and (4) "except for the substitution of the amended or substitute declaration filed by leave of Court as aforesaid, all other pleadings in this cause heretofore filed and based on the original declaration shall stand to the amended and substitute declaration."

On May 2, 1938, Industrial Tractor & Equipment Company filed (1) a special plea in bar, and (2) a plea of the general issue—not guilty.

Said special plea of the Industrial Tractor & Equipment Company ·is as follows:

"That heretofore on or about July, 1937, the plaintiff herein, for a consideration, executed an instrument whereby she settled, released and discharged this co-defendant, Bond-Chadwell Company and its

366

driver, F. H. Harper, alleged joint tort feasors, from all claims for damages growing out of the accident alleged in the declaration; and that such action or settlement on the part of the plaintiff is now pleaded by this defendant in bar of plaintiff's suit.''

On the same day, W. C. Allen filed a plea of not guilty.

The trial by the jury was begun on May 2, 1938, but before the beginning of the trial sundry motions on behalf of the respective parties to the cause were acted upon by the Trial Judge, and the aforesaid motions, with the rulings of the Court thereon, are shown by an order entered on the minutes of the Trial Court, which order is of considerable length (covering approximately five pages of the transcript) and we do not think it now material, except as follows: (1) The defendants Bond-Chadwell Company and F. H. Harper were granted leave ''to amend their special plea by making the contract of settlement or a true copy thereof an exhibit to and as a part of their special plea;'' (2) leave was likewise granted to the Industrial Tractor & Equipment Company to file an exact copy of said contract as an exhibit to its special plea; (3) the Court permitted the plaintiff to pay into court at the time of the entry of said order (March 3, 1938) the sum of $125, as and for a compliance with the tender made in her replication; and (4) the Court overruled a motion of Bond-Chadwell Company and F. H. Harper ''to strike the replication and tender made, on the ground that the plaintiff received the money and retained it with full knowledge of all the facts from the institution of the suit until this date, and thereby elected to stand on the adjustment and settlement and the contract made with these defendants.'' Bond-Chadwell Company and F. H. Harper excepted to the several rulings of the Court adverse to them in the aforesaid order.

As before stated, the record contains pleas of the general issue— not guilty—filed by Industrial Tractor & Equipment Company and W. C. Allen, but we do not find in the transcript a plea of the general issue by Bond-Chadwell Company or F. H. Harper. However, this is not essential (Lynch v. State, 99 Tenn., 124, 126, 41 S. W., 348), as it is a reasonable inference from the record that Bond-Chadwell Company and F. H. Harper each filed a plea of not guilty below; or, at any rate, it was assumed by the Court, without objection from the parties or their counsel below, that both Bond-Chadwell Company and F. H. Harper had filed such a plea, and the case was tried and submitted to the jury on that assumption.

Where a case is tried on the theory that certain material issues have formally been raised, it cannot be objected for the first time on appeal that such issues were not in fact joined by reason of the absence of a plea or replication by which they properly should have been raised. Allen v. Cherokee Motor Coach Co., 20 Tenn. App., 446, 450, 100 S. W. (2d), 240, 241, and authorities there cited.

In his charge to the jury, the Trial Judge (after stating, in sub- stance, the averments of plaintiff's declaration and the averments of the "special plea" by Bond-Chadwell Company and F. H. Harper) said: "The defendant, the Industrial Tractor & Equipment Company, by its plea interposed in this case also relies upon the special plea aforesaid interposed by the Bond-Chadwell Company. In addition to this special plea by these two named defendants, they each interpose the plea of general issue. The defendants, W. C. Allen and F. H. Harper each interpose the plea of general issue, which plea of general issue is a denial of each and every allegation contained in the plaintiff's declaration."

Later, in his charge, the Trial Judge instructed the jury at length as to the manner in which they should "consider the issue made by the declaration and the pleas of general issue as interposed by each of the defendants."

Again, the Trial Judge charged the jury as follows:

"So, if you find from a preponderance of the evidence that any one of the defendants was guilty of the negligence complained of in the declaration, and that it was the direct and proximate cause of her injuries, you should find in favor of the plaintiff, and your verdict should be against such defendant, or defendants, in such sum as would reasonably compensate her for the injuries she may have sustained as shown by the evidence.

"If you find from a preponderance of the evidence that more than one of the defendants is guilty of the negligence complained of in the declaration and that such negligence was the direct and proximate cause of her injuries, then your verdict should be in favor of the plaintiff and against such of the defendants concurring in the negligence as would reasonably compensate her for the injuries she is shown to have sustained, bearing in mind that there can be but one judgment and one recovery in any event, whether it be against one or more of the defendants. In no event can plaintiff recover of defendants Bond-Chadwell Company unless you find its agent or employee or servant guilty of negligence which was the direct and proximate cause of plaintiff's injury, since the master not being present, can only be liable through the negligent acts of its servants."

It is quite clear that the learned Trial Judge understood that Bond-Chadwell Company and F. H. Harper had each pleaded the general issue, in addition to their "special plea," and that he so instructed the jury. Counsel for neither party suggested at any time in the court below that this was a mistaken assumption, and they cannot now question its correctness. McColgan v. Langford, 6 Lea, 108, 117; Hayes v. Cheatham, 6 Lea, 1, 7; Malone v. Searight, 8 Lea, 91, 94; Hamilton v. Carter, 14 Tenn. App., 337, 340.

The first assignment of error is that there is no evidence in the record to sustain any verdict or judgment in favor of plaintiff against

the defendant Bond-Chadwell Company; and the second assignment of error makes the question that inasmuch as the jury by its verdict exonerated the defendant F. H. Harper, the driver of defendant Bond-Chadwell Company's truck, the verdict against the defendant Bond-Chadwell Company is void as a matter of law.

In the disposition of these assignments of error it is necessary to ascertain and consider the issues made by the pleas of Bond-Chadwell Company and F. H. Harper—both their "special plea" to the declaration and their plea of not guilty.

We have heretofore referred to the "special plea" of Bond-Chadwell Company and F. H. Harper as a plea of accord and satisfaction, and, within the four corners of the plea and excluding the "contract" exhibited therewith, we think it might be properly interpreted as a plea of accord and satisfaction.

The "contract" on which said plea is based (a copy of which is exhibited with the plea and made a part thereof) is as follows:

"Covenant Not to Sue.

"This instrument executed this 19 day of July, 1937, by Mrs. Hattie Summers, T. J. Summers, L. R. Rushton, and Mrs. Anna Rushton;

"Witnesseth, Whereas, in an accident occurring on the Murfreesboro-Nashville Highway in Rutherford County, Tennessee, on or about April 14, 1937, we suffered personal injuries and property damage when a truck, driven by W. S. Allen, a road grader belonging to the Industrial Tractor and Equipment Company, and another truck owned by the Bond-Chadwell Company and operated by F. H. Harper collided; and,

"Whereas, we have brought suit in Murfreesboro, Tennessee, against all of said parties and on advice of our counsel we are in doubt as to our right of recovery against Bond-Chadwell Company, a corporation, and F. H. Harper but we have complete confidence in our right to recover against said other parties to our said suits, to-wit, W. C. Allen and the Industrial Tractor and Equipment Company and believe we will recover against said remaining defendants a verdict far in excess the amount hereinafter set out and we desire to settle and adjust any claim we might have against said Bond-Chadwell Company and F. H. Harper by reason of said injuries:

"Therefore, For and in Consideration of the sum of Two Hundred Fifty ($250.00) Dollars, cash in hand paid jointly to T. C. Summers and wife, Mrs. Hattie Summers, and of another sum of Two Hundred Fifty ($250.00) Dollars, cash in hand paid jointly to L. R. Rushton and wife, Anna Rushton, the receipt of both payments being hereby acknowledged, we expressly agree and covenant with the said Bond-Chadwell Company and F. H. Harper to dismiss and not to further prosecute our suits or any of them now pending against said Bond-Chadwell Company and F. H. Harper in the Circuit Court of Ruther-

ford County, Tennessee, and we further agree, for ourselves, our heirs, and personal representatives, not to reinstate said suits or any of them or prosecute any other suit against the said Bond-Chadwell Company and/or F. H. Harper, by reason of the injuries above referred to, that have already or may hereafter develop by reason of said accident, and we agree to hold harmless the said Bond-Chadwell Company and/or F. H. Harper for any and all claims or liabilities against it or him by reason of said accident.

"This agreement, however, is not entered into or intended by us as a release of any claim or action that we might have against the said W. C. Allen and/or Industrial Tractor and Equipment Company, by reason of the matters above set forth; nor is it an agreement to dismiss our suits now pending against said W. C. Allen and Industrial Tractor and Equipment Company, and it is expressly agreed and understood that this agreement is not in any wise to inure to the benefit of W. C. Allen and/or Industrial Tractor and Equipment Company.

"It is clearly understood that this instrument is merely a covenant not to sue said Bond-Chadwell Company and F. H. Harper, and not a release of our damages against the real parties liable, to-wit, W. C. Allen and/or Industrial Tractor and Equipment Company.

"In witness whereof we have hereunto executed this instrument the day and date first above written.

"(Signed)   Hattie Summers
"T. C. Summers
"L. R. Rushton
"Anna Rushton

"Witness OK
"C. C. Jackson
"Burton Dement, Jr.,
"Attys. for Plaintiff."

Referring to the contract above quoted, the Trial Judge held, and instructed the jury, that "this contract entered into between the plaintiff and the Bond-Chadwell Company, being in writing, is one for interpretation by the Court as a matter of law, and the Court is of the opinion that the contract is a covenant not to sue the Bond-Chadwell Company or F. H. Harper, executed for its or their benefit and is not a covenant of accord and satisfaction."

But the Trial Judge further charged the jury that if they "should find from the evidence under the charge of the Court that this covenant not to sue was executed upon the fraudulent representations as alleged in the plaintiff's replication to the special plea, then in that event it would not be available to the defendant, Bond-Chadwell Company or to F. H. Harper, and you should disregard it and proceed to consider the case upon the declaration and the pleas of general issue upon its merits."

We agree with the Trial Judge in his ruling, that the *interpretation* of said written contract was *for the Court*; and we also agree that the "contract" was a *covenant not to sue,* and not a release and discharge amounting to an accord and satisfaction. Smith v. Dixie Park & Amusement Co., 128 Tenn., 112, 157 S. W., 900. Compare: Byrd v. Crowder, 166 Tenn., 215, 60 S. W. (2d), 171.

"The rule is that the allegations of a pleading are controlled by the statements of the instrument on which it is founded." 21 R. C. L., p. 477, sec. 39.

If the "contract" which the special plea purports to exhibit may be considered a part of the plea (as would be an exhibit to a pleading in chancery, 49 C. J., p. 614, sec. 879), the plea was controlled by the statements of the "contract" exhibited (49 C. J., p. 619, sec. 883) and was a plea of a covenant not to sue, *which did not present a defense to plaintiff's action or tender a material issue.* 21 R. C. L., p. 452, sec. 17.

In Nashville Interurban Railway Company v. Gregory, 137 Tenn., 422, 436, 193 S. W., 1053, 1056, the Court said:

"A covenant not to sue does not extinguish the cause of action. It is not a defense to a suit on such cause of action. The remedy of the covenantee is to bring his action for breach of covenant, although in some of the cases noted above the covenantee has been allowed to plead the covenant to avoid circuity. Inasmuch as such a covenant can only be pleaded by the covenantee by way of set-off or recoupment and is not a satisfaction of the claim for damages, it is difficult to understand how it could be available at all to another tortfeasor, either to bar the suit against him or to reduce the recovery had against him. He has no semblance of right to a cross-action."

If, in the instant case, the "contract" was not technically a part of the special plea, and the plea should be treated as a plea of accord and satisfaction, the *final result* is the same, for the only "contract" introduced in evidence for support of the special plea was the aforesaid "contract" which the Trial Court and this Court have construed as merely a covenant not to sue; hence there is no evidence in the record to support a plea of accord and satisfaction.

The covenant not to sue was not a defense to plaintiff's suit on the original cause of action, and such covenant was available to the covenantees only by way of an action to recover damages for breach of the covenant (Oliver v. Williams, 19 Tenn. App., 54, 58, 83 S. W. (2d), 271, and cases there cited), which, since the Code of 1932, might have been brought as a cross-action in this case in the manner provided in Sections 8745-8749 of that Code, which sections are as follows:

8745. "Counter declaration, when allowed.—In any action for tort where the defendant claims a cause of action, against the suing plaintiffs, or any of them, growing out of the same act, accident or transaction (such, for example, as collision of vehicles), the defendant

may, along with his pleas and within the time limit allowed therefor, and in no case later than the issue term, file a cross-declaration setting forth his cause of action, upon his executing a bond for costs, or otherwise complying with the law in lieu thereof.''

8746. ''Resident and non-resident adversaries.—In actions or suits in which a resident of another state and a resident of this state are adversary parties, every claim or demand against the suing parties, or any of them, whether liquidated or unliquidated, sounding in tort or contract, expressed or implied, or whether arising in the same or a different transaction, may be set up by plea of set-off, or as counter-claim by counter-declaration in manner and time and on conditions set forth in the section next above.''

8747. ''Service of copy.—The clerk of the court shall promptly issue duplicate certified copies of such cross-declaration to the sheriff, who shall serve same by delivering to the plaintiff one copy, returning and indorsing the fact of service on the other, in the nature of process; unless plaintiff, or his attorney of record, enters the plaintiff's appearance thereunder. In case the original plaintiff is a non-resident, service on or acceptance by his attorney of record shall suffice. The clerk's fee therefor shall be one dollar and fifty cents; the sheriff's, the fee allowed for service of an original summons.''

8748. ''Plaintiff's defense.—The original plaintiff may demur or plead to the counter-declaration, as in case of an original, within the time allowed for the filing of a rejoinder, unless a longer time be allowed by the court; and the pleadings shall proceed to issues under both the original and the counter-declaration.''

8749. ''Formulation of issues, verdict and judgment.—The issues may be formulated under the court's guidance and direction; the verdict and/or judgment may be molded to meet justice in the case; if the cross-plaintiff's damages or established demand exceed those of the plaintiff, he shall be awarded judgment for the excess, and the court may, in its discretion, adjudge the costs to be paid, in whole or any part, by either of the parties.''

█ It does not appear that the above quoted Code Sections were brought to the attention of the Trial Court. They were, however, ''the law of the land, which the parties and the court were conclusively presumed to know. Errors arising from the absence of actual knowledge in such a case are always the subject of review.'' Schmidt v. Town of Manchester, 92 Conn., 551, 103 A. 654, 655.

The plaintiff, Mrs. Summers, is, and was at the time her suit was brought and the pleadings filed, a resident of the State of Kentucky and all the defendants were residents of the State of Tennessee; hence this case is directly within the provisions of Section 8746, supra.

█ In the absence of an appropriate cross-action for damages for an alleged breach of the covenant not to sue, purely defensive pleadings averring that such covenant was procured by fraudulent

372

representations, and evidence relating to such averments, were immaterial, and were irrelevant to the determinative issues in the case.

The jury's verdict in favor of F. H. Harper, the driver of Bond-Chadwell Company's truck, and the dismissal of plaintiff's action against Harper, entitled Bond-Chadwell Company to a verdict in its favor, as a matter of law, unless Bond-Chadwell Company was liable on grounds averred in plaintiff's declaration and supported by material evidence, *other than negligence of F. H. Harper*. Loveman Co. v. Bayless, 128 Tenn., 307, 317, 160 S. W., 841, Ann. Cas., 1915C, 187.

"If the agent, the immediate actor, cannot be charged with liability for the tort, the principal, the remote actor, who had no immediate part in the tortious transaction, cannot be held responsible, for, as held in Loveman Co. v. Bayless, 128 Tenn., [307] 317, 160 S. W., 841, Ann. Cas., 1915C, 187, if the remote actor had no other direct relation to the wrong or injury, but is liable only because of the doctrine of respondeat superior, he does not occupy the position of a wrongdoer." Raines v. Mercer, 165 Tenn., 415, 420, 55 S. W. (2d), 263, 264. See also Mahaffey v. Mahaffey, 15 Tenn. App., 570, 573.

"Of course, where they are joined in such a case, a verdict in favor of the servant but against the master cannot stand, because of its inconsistency, since if the servant was innocent of negligence, the master was equally so." 1 Cooley on Torts, Non-contract Liability (4 Ed., 1932), sec. 87, p. 289.

The learned Trial Judge filed a written opinion, stating his reasons for overruling Bond-Chadwell Company's motion for a new trial, from which it appears that he was of the opinion, and ruled, in substance, that although there was evidence that the covenant not to sue was obtained by fraudulent representations for which Bond-Chadwell Company was responsible, there was *no evidence* that the covenant not to sue was not "fairly obtained" by F. H. Harper, and there was evidence that Harper was guilty of negligence which was a proximate cause of plaintiff's injuries, and the jury's verdict in favor of Harper should be referred to his defense of covenant not to sue, and that it would be assumed that the jury found "that F. H. Harper was guilty of negligence which was the proximate cause of the injury," upon which finding, "as a matter of law they were justified in returning a verdict against Bond-Chadwell Company, the employer of Harper."

In view of our holding (1) that, if the special plea of Bond-Chadwell Company and F. H. Harper be treated as a plea of accord and satisfaction, there was no evidence to support it, and (2) that if said special plea be treated as a plea of covenant not to sue, it was, in law, merely a "frivolous" plea (21 R. C. L., p. 452, Section 17), or an "irrelevant" plea (20 Ency. Pl. & Prac., pp. 27, 28), presenting

no defense to plaintiff's action and tendering no material issue, we cannot concur in the view of the learned Trial Judge that the jury's verdict in favor of Harper should be referred to his plea of covenant not to sue, rather than to his plea of not guilty.

"A material issue arises only when the matter placed in dispute by the pleadings is such a point as will determine the cause." 49 C. J., p. 781, sec. 1146.

In 49 C. J., p. 783, sec. 1151, numerous cases, including Garland v. Davis, 4 How., U. S., 131, 11 L. Ed., 907, are cited in support of the statement in the text that "no issue of fact is raised by a denial of an unnecessary or immaterial allegation."

If an immaterial issue be submitted to a jury, and they render a verdict thereon, final judgment cannot be pronounced upon the finding. Trott v. West, Moss & Co., Meigs, 163. See also Anderson v. Read, 2 Overt., 205, 5 Am. Dec., 661.

In a line of opinions by the Supreme Court of Texas, it was held that where the answer (plea), though true, presents in law no defense to the action, it cannot afford a foundation for a judgment for the defendant, when the plaintiff, on his part, has shown a cause of action supported by proof. Patterson v. Goodrich, 3 Tex., 331, 335; Ford v. Taggart, 4 Tex., 492; Hays v. Stone, 36 Tex., 181.

In Ford v. Taggart supra the Court said: "An omission to except cannot constitute a pleading which discloses no legal right the basis of an adjudication."

In Hays v. Stone, supra, the Court said: "An answer which sets up no legal defense, and presents no material issue to the jury, should be treated as a nullity."

"Where it is well established by decisions or otherwise that a particular issue is legally insufficient, it is thereafter properly treated as frivolous." 20 Ency. Pl. & Prac., page 44.

In 64 C. J., p. 1079, it is said: "Immaterial issue. A verdict founded wholly upon an immaterial issue will be set aside; but where issue is taken on several pleas, some of which are material and others immaterial, the verdict will stand, unless the evidence sustains only the immaterial issue, in which case, if there are other issues, defendant is held to be not entitled to a general verdict."

In Wilson v. Alabama G. S. Railroad Co., 77 Miss., 714, 28 So., 567, 569, 52 L. R. A., 357, 78 Am. St. Rep., 543, the Court, speaking through Chief Justice Whitfield, said:

"Ordinarily it is true that objections not specifically made below cannot here be relied on. The reason of that rule, which gives it its life, is that the opposite party may have opportunity to meet and obviate the objection. But where the court can see, as to the plaintiff, that he has no cause of action on which a judgment can be legally pronounced, or, as to the defendant, that he has no defense that the law can allow to stand, there is presented in both cases, equally, a

374

case wherein it is not legally possible to obviate the fatal fault, if opportunity to do so had been given; and this court must in such case act upon the total infirmity presented by the record."

And the foregoing statement was quoted in full and reaffirmed in the comparatively recent case of Dulion v. Folkes, 153 Miss., 91, 120 So. 437, 443.

It is provided by Section 10343 of the Code that: "A general verdict, although it may not in terms answer every issue joined, is nevertheless held to embrace every issue, unless exception is taken at the term at which the verdict is rendered."

In 64 C. J., p. 1079, it is said: "In some jurisdictions there are statutory provisions that an entire verdict given on several counts shall not be set aside if any one or more of the counts are good. . . . Such a statute, however, will not apply where the court gives an instruction on the bad counts which would authorize a verdict on such counts."

It should be observed that Section 10343 of the Code, supra, is not limited to the effect of a general verdict on two or more *counts of a declaration,* but includes a general verdict on *"every issue joined,"* whether the issue is "joined" by plea to the declaration or by replication to an affirmative plea and joinder of issue thereon, or otherwise.

It is provided by the Code, Section 8824, that, "If any counts in a declaration are good, a verdict for entire damages shall be applied to such good counts;" and, under this statute, it was held in Tennessee Cent. Railway Co. v. Umenstetter, 155 Tenn., 235, 237, 291 S. W., 452, that, where there are two good counts in the declaration, but evidence to sustain only one of them, the general verdict will be applied to that count of the declaration which there is evidence to sustain.

It was held in Sledge & Norfleet v. Bondurant, 5 Tenn. App., 319, 331, that the rule just stated applies to two separate and distinct *pleas.* We think that such would be the effect of Section 10343 of the Code, supra, whether the two pleas were purely defensive (as in the instant case) or were (as in Sledge & Norfleet v. Bondurant, supra) "set up by way of cross action, or cross relief."

There is a marked distinction between a verdict based on a pleading containing an imperfect statement of a good cause of action or defense, and a verdict based on a pleading which states no cause of action or defense. This distinction was pointed out in Curtis v. Kyte, 21 Tenn. App., 115, 126, 127, 106 S. W. (2d), 234, 241, as follows:

"Under some circumstances, an imperfect statement of a cause of action will be cured by verdict. If the averments in a declaration contain a reasonable certainty of meaning and show a substantial cause of action, although defectively stated, and the defendant does not demur to the declaration, but goes to trial under the general issue, a motion in arrest of judgment after verdict will not avail him. In

such case the defects in the averments will be presumed to have been supplied by the proof. Read v. Memphis Gayoso Gas Co., 9 Heisk., 545, 549, 550, and Memphis Gayoso Gas Co. v. Williamson, 9 Heisk., 314-324.

"But the rule just stated applies only when there is an imperfect statement of a good cause of action—one wanting merely in certainty and precision—and it will not cure want of title nor dispense with averments material to the plaintiff's right of action. Greer v. Bumpass, Mart & Y., 94, 100; Tumley v. Clarksville & M. Railroad, 2 Cold., 327; Memphis St. Ry. Co. v. Flood, 122 Tenn., 56, 73, 113 S. W., 384; Southern Railroad Co. v. Maxwell, 113 Tenn., 464, 473-478, 82 S. W., 1137, 1140.

"Omissions of 'matters of substance, that go to the rights of parties and the merits of the case,' are not cured by our statutes of Jeofails (Code 1932, sec. 8729). Cannon v. Phillips, 2 Sneed, 185-191. In Southern Railroad Co. v. Maxwell, supra, the cases on the point were reviewed at length and the court concluded that where the declaration expressed no cause of action it cannot be aided by verdict; and (said the court), 'Indeed, it cannot support a verdict, since there can be no lawful issue upon such a pleading, and without a lawful issue there can be no valid verdict.' "

On this point, see also, 49 C. J., pp. 869-870, sec. 1280.

In his charge to the jury in the instant case, the Trial Judge, after he had instructed the jury with respect to Bond-Chadwell Company's special plea of covenant not to sue, stated to the jury that if they should find that the written contract not to sue was not obtained by fraud and misrepresentation as alleged in the replication of the plaintiff, but was executed in good faith by the defendant Bond-Chadwell Company and the plaintiff, then they need not go any further with the case as regards to the defendant Bond-Chadwell Company, but should return a verdict in favor of said defendant Bond-Chadwell Company.

At this point, counsel for plaintiff interrupted the Court with the statement that, "that same plea was interposed as to Harper, as accord and satisfaction;" whereupon the Court said: "Gentlemen of the Jury, you are instructed that this plea was interposed on behalf of the co-defendant, F. H. Harper, and that if the plea was obtained fairly he would be entitled to it as much so as Bond-Chadwell Company, and you need not make further inquiry as to that, but you will return a verdict in his favor."

Then, after instructing the jury that the contract was a covenant not to sue and not a covenant of accord and satisfaction, the Court charged the jury that: "If on the other hand you should find from the evidence under the charge of the Court that this covenant not to sue was executed upon the fraudulent representations as alleged in the plaintiff's replication to the special plea, then in that event

it would not be available to the defendant Bond-Chadwell Company or to F. H. Harper, and you should disregard it and proceed to consider the case upon the declaration and the pleas of general issue upon its merits."

Later, in charging the jury with respect to the general issue of not guilty, the Court said: "The negligence complained of as regards to the defendant F. H. Harper is that he, in the operation of the truck and grader, and in parking it at the place and in the manner and time set out in the declaration, was guilty of negligence, which was the direct and proximate cause of the injuries sustained by her, of which she complains, and for which she sues." "As regards to the defendant F. H. Harper, it is alleged that he was guilty of negligence in parking the truck or grader in the manner set out in the declaration." "Now, it is the contention further of F. H. Harper, it would seem from the proof, at least, one of the operators of the truck, that he, in his operation of his truck or in parking it and letting it rest hereupon the highway, did not pre-empt, or occupy any of the space, so to speak, of the highway; that in the manner in which he parked it and left a person there to guard it, to protect it, to protect the traveling public against it, that he used such caution and prudence as the circumstances of the case demanded, and that therefore he was not guilty of any negligence. If you find that to be the facts of the case you would not find a verdict against him and your verdict should be in his favor."

Conscious, as we are, that we are dealing with a question which, *in some of its aspects,* is one of first impression in this State, and inasmuch as the Special Judge who presided at the trial below (known to be a lawyer of learning and ability) stated, in his written opinion in the record, his reasons for holding that the verdict in favor of Harper would be applied to Harper's special plea of covenant not to sue, and therefore did not exonerate his employer, Bond-Chadwell Company, we quote an excerpt from his opinion which discloses his view, as follows:

"The Court instructed the jury that 'if they found that the covenant not to sue, was obtained fairly by or on behalf of F. H. Harper, that the jury would not consider his case upon the merits; but should find and report in his favor,' the covenant not to sue being a complete defense to this action against him."

"It is to be presumed that the jury followed this instruction rather than disobeyed it; and there being no evidence adduced in support of plaintiff's replication to this special plea of 'a covenant not to sue' that it was obtained by fraud, the jury could not well have found in favor of the replication but did find in favor of the plea as to defendant Harper, but not in favor of Bond-Chadwell Company— since there was evidence that on their part the special plea was not fairly obtained. In fact the proof warranted the jury in finding upon

this special plea of 'covenant not to sue' in favor of F. H. Harper and against Bond-Chadwell Co., and under the instructions of the Court it was their duty to make no further inquiry as to the merits of the case (negligence) in so far as Harper was concerned, but to return a verdict in his favor without regard to whether he was negligent or not, or whether his negligence was the direct and proximate cause of the injury; while on the other hand having found against Bond-Chadwell Co., on his plea it was of no avail to it; and the jury were instructed to consider its case upon its merits (whether its servant was negligent) in order to fix liability upon Bond-Chadwell Company—which the jury must have hone in carrying out the instructions of the Court.

"If the jury found (as we must assume they did) that F. H. Harper was guilty of negligence which was the proximate cause of the injury, then as a matter of law they were justified in returning a verdict against Bond-Chadwell Company—the employer of Harper.

"A verdict in favor of Harper which would well be supported by his special plea of 'a covenant not to sue' as disclosed by the undisputed evidence (fairly obtained) and under which the Court would have perhaps been warranted in directing a verdict in his favor on his plea; is not an acquittal of '*the facts*' of his negligence or that his negligence was the proximate cause of the injury which, if found by the jury that he was negligent, they could do nothing more or less than, exonerate Harper on his special plea—and on the actual facts of his negligence, find and report against Bond-Chadwell Company, which they did. · There must be an acquittal of *the facts* of Harper's negligence in order that his superior may profit thereby. . . . French v. State, 159 Tenn., [451], 454, 455, [19 S. W. (2d), 276.]

"This motion raises the question that; the jury found as a fact that F. H. Harper was guilty of no negligence, (or if guilty) this negligence was not the proximate cause of the injury.

"But there is the other theory (supported by the evidence and the charge of the Court) that the jury found that F. H. Harper was protected against his negligence by his plea of a 'covenant not to sue' fairly obtained.

"We cannot assume that the jury disobeyed the charge of the Court, (that this plea was a good defense) and found against the uncontroverted evidence that, in so far as defendant Harper was concerned, this plea of 'covenant not to sue' was fairly entered into and supported by consideration.

"The Court is asked to reject this latter theory and adopt the theory of defendant Bond-Chadwell Company which is unsupported by the facts upon this issue and contrary to the instruction of the Court.

"It is further insisted in support of defendant's motion that; as a matter of law, the covenant 'not to sue' being a valid defense for F. H. Harper the agent or servant, it is equally a good defense for the master, Bond-Chadwell Company. Citing the case of J. W. Nash v.

Atlas Powder Company,[1] decided by the Honorable Court of Appeals in September, 1923.

"It appears that this unreported case of the Honorable Court of Appeals is in direct conflict with the reported case of Nashville Interurban Railway Company v. Gregory—found in 137 Tenn., [422], 436 [193 S. W., 1053, 1056]—which lays down the rule as follows:

"'A covenant not to sue does not extinguish the cause of action. . . . The remedy of the covenantee is to bring his action for breach of covenant, although in some of the cases noted above the covenantee has been allowed to plead the covenant to avoid circuity. Inasmuch as such a covenant can only be pleaded by the covenantee by way of set-off or recoupment and is not a satisfaction of the claim for damages, it is difficult to understand how it could be available at all to another tortfeasor, either to bar the suit against him or to reduce the recovery had against him. He has no semblance of right to a cross-action.' If a covenant not to sue is 'no defense to an action' it is difficult to reconcile the unreported case supra of the Honorable Court of Appeals with this statement of the law by our Supreme Court.

"With all deference to the Court of Appeals we feel it is the duty of the Trial Court to follow the decisions of the Supreme Court especially where there is patent conflict of law.

"If the case last cited by our Supreme Court is the law for the guidance of this Court and control of this case, then, a serious situation is presented indeed.

"The Court should have sustained the motion of plaintiff's counsel to strike this plea of 'covenant not to sue;' or should have allowed it only to remain in the record for the purpose of set-off or recoupment. Having failed to do this, the Court should have instructed the jury, that; it was not available as a defense to the merits of the case either as to F. H. Harper or Bond-Chadwell Company.

"Counsel for defendant certainly filed this plea in good faith, honestly believing that under the law it was a valid defense if fairly obtained (the Court does not believe that counsel had any but honest motives in filing the plea and relying upon it as a complete defense to the action against their clients). The Court also entertained the idea that it was a complete defense if fairly made, and so instructed the jury. All parties throughout the trial so treated it and accepted it as the law, that it was a complete bar (if fairly made) as to Bond-Chadwell Company and F. H. Harper.

"The jury was misled by the Court and all parties, they accepted the charge of the Court as the law (which it was their solemn duty to do) and under the law as given them in charge they evidently found in favor of Harper on this special plea. Undisputed or uncontroverted evidence justified them in so doing.

---

[1]No opinion for publication.

"If the jury were warranted in finding that this covenant not to sue was obtained by fraud upon the part of Bond-Chadwell Company as they evidently did, otherwise under the instruction of the Court, (the law as given them in charge) they would have found in its favor also and along with F. H. Harper.

"This being true; what is the duty of this Court in the premises, if it finds that the preponderance of the evidence shows that F. H. Harper agent and employee of Bond-Chadwell Company, was guilty of negligence in the operation of the truck of its employer, Bond-Chadwell Company, and that this negligence was the direct and proximate cause of plaintiff's injury?

"Should the Court permit Bond-Chadwell Company, (if guilty of fraud in procuring the covenant not to sue) and thereby through the erroneous instruction of the Court, cause the jury to find in favor of F. H. Harper and release him from liability, (although his negligent acts caused plaintiff's injury) upon this plea of covenant not to sue. What is the duty of the Court in the premises?"

"This Court is of opinion that Bond-Chadwell Company cannot take advantages that may ultimately flow to it from its fraudulent procurement of this covenant not to sue, and insists that under the case of Nash v. Atlas Powder Company, supra, the finding of the plea of the covenant not to sue F. H. Harper was fairly entered into, was in law a releasement of it also, even if that case is the law of this case."

We concede that the opinion of the Court of Civil Appeals at its September, 1923, Term, in the unreported case of J. W. Nash v. Atlas Powder Company, supra (in which there was no petition for certiorari), conflicts with the opinion of the Supreme Court in the case of Nashville Interurban Railway Company v. Gregory, supra, for it is said, near the conclusion of the opinion in the Nash case, that: "Whatever technical distinctions may exist between 'covenant not to sue' and a 'release' (which we shall not now undertake to discuss), we are satisfied that M. A. Rogers (the servant of Atlas Powder Company) could have successfully interposed the aforesaid contract, or covenant, of the plaintiff as a bar to the plaintiff's suit against him (if plaintiff had not voluntarily taken a non-suit as against Rogers), and we are of the opinion that it is a bar to a recovery by plaintiff against defendant Atlas Powder Company."

The Gregory case, supra, was not cited in the opinion of the Court of Civil Appeals in the Nash case, which fact, in view of the question involved in the Nash case, is satisfactory evidence that the Gregory case was not brought to the attention of the Court of Civil Appeals while the Nash case was under consideration by the latter Court.

We also agree with the Trial Judge that "it is the duty of the Trial Court to follow the decisions of the Supreme Court" where there is a conflict of decision between that Court and this Court.

However, the learned Trial Judge concedes, in his opinion, that, in the instant case, he did not follow the opinion of the Supreme Court in the Gregory case, but that his charge to the jury, that the covenant not to sue was a defense available to Bond-Chadwell Company and Harper, or either of them, in this case, was in conflict with the opinion in the Gregory case. We think this concession was proper, and *when taken in connection with the authorities hereinbefore cited,* compels the conclusion that the jury's verdict in favor of Harper cannot be referred to the defense of covenant not to sue, unless it must be held, as the law of the case on this appeal, that the covenant not to sue "was a complete bar (if fairly made) as to Bond-Chadwell Company and F. H. Harper" for the reason (as held by the Trial Judge) that, throughout the trial below and in his charge to the jury, the Trial Judge proceeded on that theory and the parties "so treated it and accepted it as the law."

The rule (broadly and briefly stated) is well settled that, on appeal, the parties are restricted to the theory of the case as tried in the court below. This rule is stated and elaborated, with many illustrations of its application, in 4 Corpus Juris Secundum, Appeal and Error, sec. 241, p. 465 et seq., and 3 American Jurisprudence, p. 35 et seq.; and our ruling heretofore made in this opinion, that it will be assumed that Bond-Chadwell and F. H. Harper pleaded the general issue below, is based upon this rule.

However, there are numerous "limitations of and exceptions to" the rule of "adherence to the theory below." 4 C. J. Secundum, Appeal and Error, sec. 242, p. 485 et seq.

In 3 American Jurisprudence, page 37, it is said: "An exception to the general rule has been made in some cases where the newly advanced theory involves only a question of law arising upon the proof or admitted facts, and is finally determinative of the case;" and on pages 74-76 of the same volume, many cases from numerous courts, both State and Federal, are cited in support of the statement in the text that, "although it is sometimes stated broadly as a general rule that the question of the sufficiency of pleadings cannot be raised for the first time on appeal or review, such rule is limited, ordinarily, to matters touching merely formal defects, such as those constituting grounds of pleas in abatement and of special demurrer, and does not apply in cases where the contention is that the pleading wholly and absolutely fails to state any cause of action at all, or that it is otherwise incurably defective."

Without further discussion of the point, we conclude that the jury's verdict in favor of F. H. Harper cannot be applied to his plea of covenant not to sue, and, therefore, it must be assumed that the jury acquitted Harper of the negligence averred in the declaration.

But it is further insisted by the learned counsel for plaintiff that "the jury could have found that M. D. Crotts was the agent and

servant of Bond-Chadwell Company, and that he was guilty of negligence in failing to signal or give warning to the approaching automobile in which the plaintiff was riding, which negligence would have been imputed to the principal, Bond-Chadwell Company.''

There is no suggestion in the opinion of the Trial Judge that he approved the verdict against Bond-Chadwell Company on the theory that, upon the evidence, the jury could find that M. D. Crotts was the agent or servant of Bond-Chadwell Company; but the Trial Judge expressly approved the verdict upon the theory that it should be referred to the plea of covenant not to sue, as we have hereinbefore pointed out. In Hamburger v. Illinois Cent. Railroad Co., 138 Tenn., 123, 128-129, 196 S. W., 144, 146, the Court said: ''We must know that the verdict of the jury has the approval of his judgment and his conscience. The judgment upon the vredict is not an idle ceremony, but is intended to convey to this court the approval of the trial judge of the weight and credibility of the witnesses as fixed by the verdict of the jury. . . . It is impossible to say from the record whether his honor agreed with the jury as to the weight of the testimony or not.'' See also opinion on petition to rehear in Merriman v. Coco Cola Bottling Co., 17 Tenn. App., 433, 445, 68 S. W. (2d), 149.

It does not appear from the charge in the instant case that His Honor (aside from the bare statement of the contents of the declaration and the pleas in the outset of the charge) expressly or by necessary inference submitted to the jury the issue as to whether or not M. D. Crotts was the servant or agent of Bond-Chadwell Company, which tends to confirm the view that the Trial Judge did not approve the verdict on that ground.

In the view just stated, we do not think it necessary to extend this opinion (already too long) by a review of the evidence touching the relation of M. D. Crotts to the parties and the transaction involved in this case, further than to say that it appears, without dispute, that Crotts was the general servant or employee of the Industrial Tractor and Equipment Company, as ''mechanic and service man,'' and we do not think there is any material evidence in the record that, on the occasion here in question, he was the servant of or under the control and direction of Bond-Chadwell Company; hence the doctrine of ''lent servant'' does not apply, and the record affords good reason for the learned Trial Judge to decline to place his approval of the verdict against Bond-Chadwell Company upon that ground. 18 R. C. L., p. 784, sec. 244; 39 C. J., p. 1274, sec. 1462.

For the reasons hereinbefore stated, we sustain the first and second assignments of error, supra, of Bond-Chadwell Company.

Our rulings upon the first and second assignments of error render the third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh and twelfth assignments of error immaterial.

382

This leaves for disposition only the eighth assignment of error, which is that, "the Court erred in overruling the twenty-third ground of the motion for new trial which complained of the failure of the Trial Court to sustain the motion of the defendant Bond-Chadwell Company made at the conclusion of plaintiff's proof and renewed at the conclusion of all the proof, for leave to withdraw the plea of general issue and the special pleas filed by this defendant and permit it to file a plea in abatement, which plea in abatement was tendered, properly executed, at the time the motion was made."

The record before us does not support the statement in the assignment of error just quoted, that Bond-Chadwell Company tendered a plea in abatement, properly executed, at the time the motion mentioned in the plea was made; in that, there is no such plea in abatement in the record.

It appears from the bill of exceptions that, after counsel for Bond-Chadwell Company had orally stated his motion for leave to withdraw his former pleas and file a plea in abatement, and the Court had indicated that the motion would be overruled, the following occurred:

"Mr. Goodpasture: For the purpose of the record may I be permitted to file the original of these pleas with the record and show that the Court did not allow them to be filed other than just to get them made part of the record.

"The Court: Let the record show they were tendered and the Court declined to let them be filed. Let the bill of exceptions take care of it.

"Mr. Goodpasture: That is what I had in mind, if your honor please, and I want to pass these to the stenographer for him to identify these pleas as the ones tendered at this time.

"The Court: That will be all right.

"Mr. Goodpasture: We except to the action of the Court."

But the plea in abatement thus tendered was not preserved for the record, either in the bill of exceptions or otherwise.

■ "Pleas in abatement are allowed stricti juris, and no latitude in practice is extended to them; they must always be filed in the right time, in the right place, and be properly verified, before the Court will entertain them. They are construed with great strictness and are not favored in the law." History of a Lawsuit (4 Ed.), Martin, p. 166.

■ Obviously, the Trial Court should not be put in error for declining to permit a plea in abatement to be filed in the midst of a trial on other issues, unless the tendered plea in abatement disclosed sufficient grounds for abating the suit, and, in the absence of the plea in abatement, we are, of course, unable to ascertain its contents. The eighth assignment of error is overruled.

It results from our ruling on the first and second assignments of error, that the judgment of the Circuit Court against Bond-Chadwell

Company is reversed, the verdict of the jury against said defendant is set aside, and the suit is dismissed.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiff, Mrs. Summers, and the surety on her cost bond below. Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 704.

Crownover and Felts, JJ., concur.