BUFKIN *et al. v.* GRISHAM.

(Division B. May 19, 1930.)

[128 So. 563. No. 28657.]

Wynn & Hafter, of Greenville, for appellants.

Shands, Elmore & Causey, of Cleveland, for appellee.

Ethridge, P. J., delivered the opinion of the court.

J. G. Grisham was plaintiff in the court below, and filed a suit against J. Q. Strange and R. L. Bufkin for damages resulting from sickness and injury to the plaintiff caused by drinking a bottle of Coca-Cola manufactured by Strange and one Pidgeon, a partnership operating a Coca-Cola bottling plant in Cleveland, Mississippi, of which R. L. Bufkin was manager but not an owner.

It appears that about July 1, 1929, the plaintiff went to Brown drug store at Merigold, Mississippi, and pur-

chased the bottle of Coca-Cola, of which he had consumed about one-third, when he was called from the drug store to his place of business. As he reached his place of business, he became violently sick, and vomited for a considerable period. A doctor was summoned who treated him and testified as to his illness and injury, and that the said plaintiff was under his treatment for several days, and that his stomach was affected from drinking the concoction, and he had to be placed on a diet. According to the doctor's recollection, the patient was under his treatment for some two or three weeks at intervals. From other testimony it appears that he was confined to his bed for two days and remained in Merigold only about a week after the injury and moved to Arcola, Mississippi. It was testified for the plaintiff that he was still affected by the injury, and was still on a diet, and could not eat heavier foods, but that prior to his injury he was healthy and could eat almost any food.

There was a verdict for one thousand two hundred fifty dollars for the plaintiff, from which judgment this appeal is prosecuted.

It appeared that Pidgeon was a resident of Memphis, Tennessee, and was not served, and that Strange was a resident of Washington county, and Bufkin was a resident of Bolivar county where the bottling works were operated. Strange made a motion for a change of venue to Washington county, and also filed a plea of misjoinder as to Bufkin, contending that Bufkin was made a defendant for the fraudulent purpose of obtaining jurisdiction.

The declaration was drawn on the theory of tort and not on the theory of implied warranty, and it is the contention of the appellant that it is the settled law of Mississippi that the seller of drinks of the character of Coca-Cola is a warrantor of their fitness for consumption, and that the action is one of contract and not one in tort. It is true that the court has held that the manufacturer of drinks for human consumption impliedly warrants their fitness and purity for the use for which they were

manufactured, and that, regardless of negligence, he is liable for injuries resulting from the impurities or deleterious effects of such drinks. However, the party may be also liable for negligence in manufacturing drinks by which deleterious or harmful agencies are permitted to be mixed with the drink. In case of gross negligence, the manufacturer may be held liable for punitive damages, but in an action of implied warranty he would not be liable for punitive damages. As Bufkin was the general superintendent of the bottling works at Cleveland, charged with the duty of seeing that all of the operations were properly conducted in the bottling of the drinks, we think his negligence in performing his duties would render him personally liable jointly and severally with the owner for whom he was managing.

It was testified by numerous witnesses, and practically without dispute, that, if the plant had been properly operated, and the manager properly watchful, it would be impossible for foreign and deleterious substances to get into the bottles. It was clearly negligence, therefore, to permit the business to be operated so as to have such deleterious substances in the bottles. We think, therefore, that Bufkin was a proper defendant, and that jurisdiction was rightfully obtained in Bolivar county, where Bufkin lived, under section 500 of Hemingway's 1927 Code, section 707, Code of 1906, and that it was not error to overrule the motion of Strange for a change of venue to Washington county.

We are also of the opinion that it was not error for the court to rule that Bufkin was a proper party; as stated above, he was liable on the theory of his negligence, and could be sued jointly and severally with Strange. Therefore there was no misjoinder of plaintiffs.

It is next alleged that the court erred in admitting testimony over the objection of the defendant in going into details of the conviction of R. L. Bufkin on a former offense. An examination of the evidence upon this shows

that the counsel sought to have the conviction of Bufkin in the mayor's court in the town of Cleveland established as affecting his credibility. He was asked the question:

"Now, Mr. Bufkin, have you been convicted in the Mayor's Court, here in the town of Cleveland?" His answer was: "I tell you, Judge, I don't know just how that worked. We paid a dollar and costs, on a particular appeal that came from Rosedale, on the record. We served some boats on the river, that goes up White River.

"Q. Well, you were convicted? A. Yes, sir.

"Q. In the Mayor's Court? A. Yes, sir.

"Q. What were you convicted for? A. For some little bit of speck being in a bottle.

"Q. You were convicted—the charge against you was for running an unsanitary bottling plant? A. That was the charge, but we was not convicted for that.

"Q. They charged you with that, when you were convicted? A. We were tried before the Mayor; the Mayor —we got him to go up there, Mr. Dedwyler wouldn't go, the Mayor went up there, and came back, and says, You can't charge this man with running an unsanitary place, because it is absolutely sanitary.

"Q. Well, now, that is not responsive to the question —you were convicted here? A. On some charge, I don't know what that was.

"Q. Dr. Dedwyler, the health officer, made an affidavit against you? A. Yes, sir.

"Q. You did pay a fine? A. Yes, sir.

"Q. Now, then, that conviction of you, at that time, was on the 27th day of June, 1929, was it not? A. I don't remember the day, Judge. I just don't remember—sometime along that time, however, in June.

"Q. Sometime in that June? A. Yes, sir.

"Q. That conviction of you was during the last week in June, was it not? A. Of course, I don't know—possibly it was. I don't know—I won't say it was, or it was not."

It will be seen from these questions and answers that it was difficult to get the witness to understand and testify as to what offense he was convicted of. The details of the prior conviction are not permissible in evidence, but the conviction is competent to go to the credibility of the witness, and the examiner has a right to ask the witness, not only if he has been convicted of crime, but what crime he has been convicted of. Such details of the crime as are here given were given by the witness in answer to questions that would not call for the details of the crime, but would call for him to say for what he had been convicted. We do not think this constituted reversible error.

It is next contended that the verdict is excessive. It will be noted from the statement of the case that the defendant was made very sick for several hours, that he vomited excessively, and had trouble with his stomach for some time after taking the concoction; the doctor attending stating that the effects were similar to ptomaine poison. It appeared that the plaintiff, at the time of the trial, had not been fully restored to his usual health, and that he could not eat heavy foods, but was on a diet. Taking all the facts together as contained in the record, we are unable to say that the jury was so prejudiced or influenced by passion or bias as to destroy their verdict. While the recovery is rather large for the injury disclosed, still it is a case where reasonable minds might differ as to the amount, and reasonable minds might award damages to the extent that the jury did. In such case the verdict of the jury must stand, unless the court can say that the jury was influenced by passion or prejudice, which we cannot say in this case.

The judgment of the court will therefore be affirmed.

Affirmed.