COCA-COLA BOTTLING CO., INC. *v.* SAVAGE

No. 40219          October 1, 1956          89 So. 2d 634

*Watts & Colmer,* Pascagoula, for appellant.

*Robert A. Oswald*, Pascagoula, for appellee.

Etheridge, J.

This is another in a long line of cases based upon the implied warranty of a bottler of a beverage that the beverage bottled and distributed by it is wholesome and fit for human consumption. This implied warranty enures to the benefit of the ultimate consumer. Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939). The appellee, Mrs. Della Savage, who was plaintiff in the court below, obtained a judgment for $500, which we affirm.

Mrs. Savage attended in Pascagoula a meeting of the Rebekah Lodge, which is a branch of the ladies associated with the Odd Fellows. About 30 members were present. John Bennett, whose wife was one of the hostesses for the occasion, bought the coca-colas from Adams Grocery at Kreole. As the members came in the room to be served buffet style, he opened the bottles and placed them on the table near the food. Plaintiff took a bottle of coca-cola, sat down with some friends, and ate fried chicken and potato chips. After she had drunk a good deal of the beverage, she noticed that it had a peculiar taste and discovered in the bottle a small circular metal bell, similar to those used on children's toys, and some dirt. She was unable to remove the bell from the bottle. She testified that the beverage had an odd taste to it. It caused a burning sensation in her throat, mouth and stomach, resulting in considerable nausea. She went to a doctor the next day, and he prescribed some medicine. She was not able to eat any food for three days, drinking only milk during that period. She said the inside of her mouth was sore and "blistered" and that her stomach "burned". She stayed in bed for three days, but six days transpired before she felt normal again. During this time she was unable to sleep, and was most uncomfortable.

Tom Adams, owner of the grocery from which Bennett bought the coca-colas, said that he purchased them from a truck driven by Greeneau, who operated from appellant's distributing plant in Pascagoula. Joe Sangruber, manager of operations of the appellant bottling company in Mobile, testified that appellant furnished the Pascagoula warehouse the coca-colas which it distributed, and that Greeneau was an employee of the defendant and had been for several years, driving a truck route from the Pascagoula warehouse. He also described the careful and thorough method which appellant had of cleaning, filling and capping the bottles.

In a case of this type, three things are to be ascertained: (1) Was the extraneous matter in the bottle when it left the factory and was offered to the public? (2) Did the consumer have title and rightful possession of the bottle? (3) Did the consumer receive injury from drinking the beverage with the extraneous matter in it? Coca-Cola Bottling Co. v. Lyons, 145 Miss. 876, 882, 111 So. 305 (1927). For the development of this line of cases, see Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 64 So. 791 (1914); Rainwater v. Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444 (1922); Grapico Bottling Works v. Ennis, 140 Miss. 502, 106 So. 97, 44 A. L. R. 124 (1925); Jackson Coca-Cola Bottling Co. v. Grubbs, 143 Miss. 590, 108 So. 732 (1926); Coca-Cola Bottling Works of Greenwood v. Simpson, 158 Miss. 390, 130 So. 479 (1930), noted in 3 Miss. L. J. 248 (1931); Neely v. Jackson Coca-Cola Bottling Co., 183 Miss. 635, 184 So. 467 (1938); Meridian Coca-Cola Bottling Co. v. Illges, 187 Miss. 27, 191 So. 817 (1939); Hattiesburg Coca-Cola Bottling Co. v. Cawley, 2 So. 2d 143 (Miss. 1941). Bufkin v. Grisham, 157 Miss. 746, 128 So. 563 (1930), and Blount v. Houston Coca-Cola Bottling Co., 184 Miss. 69, 185 So. 241 (1939), were based on the alternative tort or negligence theory. See 12 Miss. L. J. 126 (1939).

The testimony amply supports the finding of the jury on all three issues. Appellant contends that the evidence failed to show that this particular bottle was manufactured by it, and that the metal bell was in the bottle when it left the factory and was offered to the public. However, the sequence of events with reference to the filling and capping of the bottle at appellant's plant, the delivery to Adams Grocery, the purchase by Bennett from the grocery, and his opening the bottle for appellee to drink its contents justified the jury's conclusion that this bottle was manufactured by appellant, the bell was in the bottle when it was capped at appellant's plant, and

it was this particular bottle manufactured by appellant which appellee drank.

 Nor do we think that the verdict of the jury for $500 was so excessive as to evince passion and prejudice by the trier of fact.

Affirmed.

*McGehee, C. J.* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.