GENERAL MOTORS CORPORATION, Plaintiff-in-Error-Defendant, v. MRS. R. P. DODSON, Defendant-in-Error-Plaintiff.

GENERAL MOTORS CORPORATION, Plaintiff-in-Error-Defendant, v. R. P. DODSON, Defendant-in-Error-Plaintiff. —338 S. W. (2d) 655.

Middle Section at Nashville. January 15, 1960.

Rehearing Denied February 26, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

440

Braly Craig, Lewisburg, Frank C. Gorrell of Bass, Berry & Sims, Nashville, for plaintiff in error.

Wade & Forrester, Pulaski, for defendants in error.

HICKERSON, J. R. P. Dodson and Mrs. R. P. Dodson are husband and wife. They bought a new Oldsmobile automobile from Kemp Motor Company, Gallatin, Tennessee, an authorized dealer of General Motors Corporation, the manufacturer of Oldsmobile automobiles.

The brakes of this new automobile were defective from the beginning. While Mrs. R. P. Dodson was driving the automobile the brakes locked and as a result the automobile plunged into a ditch near Pulaski, Tennessee, and Mrs. Dodson was severely and permanently injured.

R. P. Dodson and Mrs. R. P. Dodson filed their separate suits against General Motors Corporation to recover the damage each sustained as a result of the wreck.

The suits were based upon an alleged breach of warranty or contract on the part of General Motors.

General Motors filed the following plea:

"Comes the defendant General Motors Corporation and for the plea of the averments and allegations contained in plaintiff's declaration says:

"1. That it is not indebted to the plaintiff for any breach of contract or warranty.

"2. That it has not committed any breach of contract or warranty, expressed or implied, to which the plaintiff was a party.

"3. That the warranty covering the automobile described in plaintiff's declaration had expired by lapse of time or by the usage of the automobile.

"Therefore defendant says that it is not guilty of the things and matters alleged in plaintiff's declaration, and prays to be dismissed."

The cases were tried together by a judge and jury. Judgments were entered upon jury verdicts, as follows: For Mrs. R. P. Dodson against General Motors in the sum of $30,000; and for R. P. Dodson against General Motors in the sum of $15,000.

To review these judgments General Motors has appealed in the nature of a writ of error to this Court.

1. Assignment one makes the question that the trial judge erred when he refused to direct verdicts in favor of General Motors and to dismiss plaintiffs' suits upon such directed verdicts.

This assignment is based upon four grounds set forth in the assignment: (1) There was no privity of contract between plaintiffs and General Motors; (2) there was no evidence that General Motors breached any warranty; (3) by using the automobile, plaintiffs waived any right to recover for breach of warranty; and (4) the automobile was sold to a partnership and plaintiffs, as individuals, could not maintain a suit for breach of warranty.

The rules relating to the consideration by the Court of a motion for directed verdict are fully and accurately stated by this Court in an opinion prepared by Judge Felts, Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 196, S. W. (2d) 563, 567, wherein the Court said:

"The rule for determining a motion for a directed verdict has often been stated in numerous cases. It has been fashioned to preserve the constitutional right of trial by jury and to administer the common law separation of function by which the jury try the fact and the judge the law. It requires the trial judge, and the appellate court on review, to look to all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, to allow all reasonable inferences from it in his favor, to discard all countervailing evidence; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. Wildman Mfg. Co. v. Davenport Hosiery Mills, supra; Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099; Provident Life and Acc. Ins. Co. v. Prieto, 169 Tenn. 124, 83

S. W. (2d) 251; Osborn et al. v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510; Patillo v. Gambill et ux., 22 Tenn. App. 485, 492, 124 S. W. (2d) 272, 276; Tennessee Cent. Ry. Co. v. McCowan, Tenn. App., 188 S. W. (2d) 931.''

The evidence in the record supports a finding by the jury of the following facts: Plaintiffs bought the new Oldsmobile in question from Kemp Motor Company, which was an authorized dealer for General Motors Corporation, Oldsmobile Division. General Motors, the manufacturer of Oldsmobile automobiles, gave Kemp, the dealer, a booklet entitled, ''Direct Dealer Selling Agreement.'' This booklet contained the contract or agreement under which General Motors and Kemp dealt with each other.

Section 9, page 8 of the agreement provides:

''Warranty. There are no warranties, expressed or implied, made by Seller to Dealer on the Oldsmobile motor vehicles, chassis or parts furnished hereunder except to the extent comprehended in the following:

'' 'The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned

to it with transportation charges prepaid and which
its examination shall disclose to its satisfaction to
have been thus defective; this warranty being ex-
pressly in lieu of all other warranties, expressed
or implied, and all other obligations or liabilities on
its part, and it neither assumes or authorizes any
other person to assume for it any other liability
in connection with the sale of its vehicles.

" 'This warranty shall not apply to any vehicle
which shall have been repaired or altered outside
of an authorized Oldsmobile Service Station in any
way so as in the judgment of the Manufacturer to
affect its stability and reliability, nor which has been
subject to misuse, negligence or accident.' "

Section 34, page 20 provides:

"This agreement is to be governed by and con-
strued according to the laws of the State of Michi-
gan. If, however, any provision in anywise contra-
venes the laws of any state or jurisdiction where
this agreement is to be performed, such provision
shall be deemed not to be a part of this agreement
therein."

When Kemp, the authorized dealer, sold this new Olds-
mobile to plaintiffs, General Motors required the dealer
to deliver a booklet to the purchaser or consumer (plain-
tiffs) entitled, "Oldsmobile Owner Protection Policy and
Operating Manual." This manual was the contract or
agreement under which plaintiffs purchased and owned
the automobile. This manual provides, page 1:

"On New Oldsmobile motor vehicles, purchased by
the Dealer issuing this Policy from Oldsmobile Divi-
sion, General Motors Corporation (the Manufac-

turer), Manufacturer gives Dealer the Warranty quoted below. On each new Oldsmobile motor vehicle sold by Dealer, Dealer, as seller thereof and not as agent of Manufacturer, gives Purchaser a like Warranty.

" 'The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this Warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and all other obligations or liabilities on its part, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.

" 'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an authorized Oldsmobile Service Station in any way so as in the judgment of the Manufacturer to affect its stability and reliability, nor which has been subject to misuse, negligence or accident.' "

Wherefore, it is seen that General Motors gives the dealer a written express warranty; and General Motors,

the manufacturer, requires its dealers to give the ultimate purchaser the same identical express warranty which the manufacturer gives the dealer.

The booklet containing the warranty which the manufacturer gave its dealer; and the manual which contained the warranty from the dealer to the ultimate consumer, were both prepared by General Motors and sent with the new automobile to the dealer. General Motors was dictating the two warranties completely: one from itself to the dealer, and one from the dealer to the purchaser or consumer. And, as stated, the two warranties were identical. The practical effect of this entire plan was that General Motors gave the warranty to the ultimate consumer; but for reasons satisfactory to itself, General Motors devised and put into operation the plan whereby General Motors dealt only with the dealers and never with the purchasers who were in fact the beneficiaries of the warranty. Defective parts or workmanship would only be discovered by the use of the automobile, and it was only used by the consumer.

(1) The principal defense pleaded by General Motors is that plaintiffs cannot recover on the theory of breach of warranty because there is no privity of contract between plaintiffs and General Motors; and, in fact, there is no contract of any kind between plaintiffs and General Motors. This is the first ground of the motion for directed verdict set out above. The trial judge submitted to the jury the issue whether there was an express warranty by General Motors to plaintiffs, and we think correctly so. Town of Franklin v. Hermitage Engineering Co., 12 Tenn. App. 434; Sullivan v. Bandy, 15 Tenn. App. 411.

█ This rule is stated in Thoni v. Hayborn, 37 Tenn. App. 56, 260 S. W. (2d) 376, 378:

"The jury returned a general verdict. The effect of such verdict in the case on trial was to decide each issue in favor of plaintiff if there was material evidence to support such verdict. Code Section 10343; Summers v. Bond-Chadwell Co., 24 Tenn. App. 357, 145 S. W. (2d) 7; Stewart v. Parker, 33 Tenn. App. 316, 232 S. W. (2d) 57."

█ In Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965, 971, this Court said:

"Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities, or inconsistent theories, are equally supported by the evidence, the case must go to the jury. Law v. Louisville, etc., Railroad Co., 179 Tenn. 687, 699, 170 S. W. (2d) 360; New York Life Insurance Company v. Nashville Trust Co., 178 Tenn. 437, 159 S. W. (2d) 81; Bryan v. Aetna Life Insurance Co., 174 Tenn. 602, 130 S. W. (2d) 85; Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Pickard v. Berryman, 24 Tenn. App. 263, 142 S. W. (2d) 764; Gifford v. Provident Life Insurance Co., 16 Tenn. App. 21, 64 S. W. (2d) 64; Jones Commentaries on Evidence, Second Edition, Revised and Enlarged, page 23, section 12."

■ Applying these rules, the jury could have found that General Motors was the actual person or entity with whom plaintiffs were dealing, and Kemp was a conduit or subterfuge by which General Motors tried to exempt itself from liability to the consumers who are the plaintiffs.

■ Should plaintiffs be wrong about the express warranty, they certainly are not wrong in their contention that the Uniform Sales of Goods Act created by statute an implied warranty of the automobile from General Motors, the manufacturer, to plaintiffs' the consumers. T.C.A. secs. 47-1201 to 47-1234. This Uniform Sales Act, which is in force in this jurisdiction, provides, T.C.A. sec. 47-1215:

"Implied warranties of quality or fitness.—Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or

not), there is an implied warranty that the goods shall be of merchantable quality.

* * * * * *

"(6) An express warranty or condition does not negative a warranty or condition implied under this chapter, unless inconsistent therewith."

█ Wherefore, our conclusion is this: there was an express warranty and an implied warranty from General Motors to plaintiffs. There is nothing inconsistent in the two warranties, so they may both be in effect at the same time. T.C.A. sec. 47-1215, subsection (6); Kohn v. Ball, 36 Tenn. App. 281, 254 S. W. (2d) 755.

▪ █ (2) Defendant contends there is no evidence that it breached any warranty. The proof shows the brakes were defective from the time plaintiffs began to use the automobile. Within three or four weeks and before it had been driven 4,000 miles, plaintiffs took the car back to Kemp, the authorized dealer from whom they bought it, and told Kemp about the defective brakes. Time after time plaintiffs took the car to authorized dealers to fix the brakes. They all failed. The evidence shows defendant did breach its contract or warranty. In recognition of that fact, General Motors paid the bills submitted by the dealers who tried to fix the brakes.

In addition thereto, General Motors sent a bulletin No. 54W-21 to Kemp and all its other dealers stating that they had trouble with a certain portion of their Oldsmobiles sold for 1954. Kemp had knowledge of this fact; and, as stated, General Motors had knowledge of the fact; and yet each of them failed to notify plaintiffs. Wherefore, General Motors cannot maintain its position that it did not breach these warranties. To the contrary

it expressly breached them with full knowledge and consciousness that it was so doing.

■ (3) We do not think plaintiffs waived their right to maintain a suit for breach of warranty because they used the automobile when they knew the brakes were defective. Each time plaintiffs would take the car to an authorized dealer to correct the brakes, such dealer would assure plaintiffs that the brakes were in good condition. Relying upon such assurance, plaintiffs continued to use the automobile, but it was constantly in and out of a garage.

■ (4) Defendant makes the contention in this Court that Richland Mills is a partnership and for that reason plaintiffs, as individuals, could not maintain their suits; that the suit would have to be brought in the name of the partnership.

1. There is no merit in this contention. The jury could have found from the testimony that R. P. Dodson was speaking of a partnership between himself and his wife in the popular sense of the word. It is a common expression between man and wife that: "We are partners in everything. We own everything together." However, such statement is made in relation to their life together as man and wife. Actually, the Richland Mills was merely a trade name under which R. P. Dodson did business. General Motors contended in the trial court that Richland Mills was a proprietorship or trade name under which R. P. Dodson did business, and was not a legal partnership owned by Mr. and Mrs. Dodson. Frank C. Gorrell, Attorney for General Motors, made the following affidavit in the lower court in support of his motion for new trial:

"Affidavit

"I, Frank C. Gorrell, attorney for the defendant General Motors, do hereby make oath that I have made an investigation into the business status of Richland Mills and have found that Richland Mills is not a partnership as testified to by Mr. and Mrs. Robert P. Dodson at the trial in this case.

"I further make oath that the defendant did not know at the time of the trial of the case that the business was a proprietorship not a partnership as testified to by the plaintiffs but that during the course of the trial it made diligent inquiry into these facts but was unable to discover any facts to contradict the plaintiffs' testimony.

"I further make oath that said evidence is material and important to the issues of this law suit.

"s/ Frank C. Gorrell
"Frank C. Gorrell."

We hold with plaintiffs on the partnership issue that plaintiffs could maintain their suits, if at all, in their individual names as plaintiffs.

2. After the wreck, R. P. Dodson sold the car to one of his employees: Delmer McDougal. Complaint is made by General Motors (second assignment of error) that the trial judge committed error when he permitted R. P. Dodson to testify that McDougal had the same trouble and experience with the brakes on this Oldsmobile that plaintiffs had. Furthermore, plaintiff testified that McDougal put a new master brake cylinder on the car and discarded the old one. Thereafter, the brakes worked perfectly. Defendant contends this testimony was too remote since it was admitted two years

after the car was new and nine months after the accident. A wide discretion is given the trial judge in regard to the introduction of evidence. Defendant was in no way surprised. McDougal's experience with the car was the same plaintiffs had. The car had been in and out of garages since it was new in an attempt to correct these brakes. We think plaintiffs had a right to show what the trouble was when he found out for himself. As stated, after a new master brake cylinder was put on the car it worked perfectly.

3. Assignment three is: "It was error for the Court to overrule defendant's objection and allow the witness, Robert Hughes, to testify concerning the discovery of the improperly working brake cylinder nine months after the accident, and more than two years following the purchase of the car."

For the reasons stated in considering assignment two, assignment three is overruled.

4. We quote assignment four: "It was error for the Court to overrule defendant's objection and allow the witness, Elmer McDougal, to testify concerning the existence of an improperly working master brake cylinder nine months after the accident and two years after the purchase of the automobile by the Dodsons."

For reasons stated in considering assignment two, assignment four is overruled.

5. Defendant complains of the charge of the trial judge whereby the jury were instructed to consider the issue of implied warranty. Defendant contends plaintiffs' declarations and proof were based upon express warranty; that implied warranty was not supported by a pleading or proof.

We think the declarations are broad enough to support a verdict by the jury on the theory of express warranty or on the theory of implied warranty. General Motors evidently had this understanding of the declarations, because defendant's plea number two to the "Averments and Allegations Contained in Plaintiff's Declaration," states:

"That is has not committed any breach of contract or warranty, *express or implied,* to which the plaintiff was a party."

The fifth assignment is overruled.

6. The sixth assignment is:

"The verdict was contrary to the law and the evidence."

 This assignment is too general and will not be considered by this Court. Lasater Lumber Co. v. Harding, 28 Tenn. App. 296, 189 S. W. (2d) 583.

7. We quote the seventh assignment:

"It was error for the trial court to overrule the defendant's motion for a new trial made on the above grounds."

 This error is too general and will not be considered. Taylor v. Taylor, 14 Tenn. App. 101.

The ultimate determinative facts are these: General Motors put on the general market in 1954 an Oldsmobile automobile which it learned was defective in the braking system. It notified its dealers and suggested a way to remedy the defect and directed its dealers to contact all purchasers of this defective automobile and to remedy same. The notice to the dealers was in the nature of a

general bulletin. The bulletin was in writing and provides in part:

"Dealer Technical Information Bulletin.

"Number 54-W-21
"Subject Date 3-5-54
"Group Accessories

"1. 1954 Power Brake Vacuum Reserve tank collapsing

'2. Inoperative power brake solenoids (1954 Models)

"A few Power Brake Vacuum Reserve Tanks have been found collapsed on early 1954 models as a result of the inability of the tank shell to withstand atmospheric pressure when the tank is subjected to full engine vacuum.

"A listing of all power brake equipped cars received by your dealership which are subject to this condition will be supplied by your zone office. As soon as you receive this listing, all cars involved should immediately be called in and a reinforcing clamp installed on the vacuum reserve tank as shown in Figure 1."

Plaintiffs bought one of these Oldsmobiles and had trouble with the brakes as soon as they started driving the car. Neither the manufacturer nor the dealer notified plaintiffs of this defect in the braking system when they had actual knowledge of the defect. Three authorized dealers worked on the brakes of this car and each dealer stated the car was in perfect condition. This constant trouble with the brakes continued from the time plain-

tiffs purchased the car until Mrs. Dodson had her accident.

Under these facts, we think the trial judge correctly submitted all issues to the jury and properly approved their verdicts in favor of plaintiffs and entered judgments thereon.

The assignments of error are overruled, and the judgments of the Circuit Court of Giles County are in all things affirmed with interest and all costs.

Felts and Shriver, JJ., concur.

On Petition to Rehear.

HICKERSON, J. General Motors has filed an earnest petition to rehear. Want of privity of plaintiffs and General Motors is the basis of the petition.

That same defense was made on the regular hearing, and we thought we had responded to that defense in our original opinion, at page 660 of 338 S. W. (2d). However, out of deference to the apparently sincere desire of Counsel for General Motors to be helpful to this Court and to properly represent General Motors, as set out in the petition to rehear, we shall respond to the petition on the merits.

Petitioner has cited only one case in support of its petition: Burkett v. Studebaker Bros. Mfg. Co., 126 Tenn. 467, 150 S. W. 421, 422. On pages eight and nine of its petition, General Motors states:

"It is believed that the proper answer to the court's opinion is the unequivocal language of the Supreme Court of Tennessee to the effect that the law is clear that 'a manufacturer is not liable to a

third person who buys his goods from an intermediate dealer, because of the want of any privity between the parties'. Burkett vs. Studebaker, 126 Tenn. 467 [150 S. W. 421].''

This sentence lifted from the paragraph and out of context does not show what the Court held in Burkett v. Studebaker Bros. Mfg. Co. We here quote the entire paragraph from which petitioner quoted only one sentence. The paragraph provides:

"The general rule is that a manufacturer is not liable to a third person, who buys his goods from an intermediate dealer, because of the want of any privity between the parties. *The rule is different, however, if the manufacturer had knowledge of the defect and put it upon the market in that condition. In such case he is guilty of fraud, and is liable to any one into whose hands the article falls, and who is injured while using it properly. He is also liable to such third person, where the article sold is of such kind as to be imminently dangerous to human life or health; also, when the article, although not apparently dangerous, is known by him to be such, and he gives no notice of its qualities when he puts it upon the market.''* (Emphasis added.)

■■■ Petitioner did know the Oldsmobile bought by plaintiffs was dangerously defective in its braking system and it put the automobile on the general market in that condition. Furthermore, the automobile, in its defective condition, was imminently dangerous to human life from its use for the purpose for which plaintiffs bought it. The automobile was not apparently dangerous so plaintiffs could see the danger and be warned thereof

by looking at it. Petitioner had actual knowledge that it was dangerous in its defective condition, but failed to warn plaintiffs of the danger.

So, under the Burkett case, the facts of the case on trial make out a case for plaintiffs against General Motors if there be a want of privity between them.

In Dunn v. Ralston Purina Co., 38 Tenn. App. 229, 272 S. W. (2d) 479, 481, in an opinion by Judge Felts, now Mr. Justice Felts of the Supreme Court, this Court specifically by name overruled Burkett v. Studebaker Bros. Mfg. Co., supra. In the Dunn case, Judge Felts said:

"These facts, we think, were sufficient to put a duty of care upon the Company toward plaintiff. It is true there was no such duty on a manufacturer, in the absence of privity, under the so-called general rule of non-liability which was applied in Burkett v. Studebaker Bros. Mfg. Co., 126 Tenn. 467, 150 S. W. 421, and like cases.

"But it can hardly be said that such a general rule any longer exists. It has been discarded in England (Grant v. Australian Knitting Mills, [1936] A. C. 85, 105 A. L. R. 1483), and in the United States the exceptions have swallowed up the rule. Carter v. Yardley Co., 319 Mass. 92, 64 N. E. (2d) 693, 164 A. L. R. 559, 568; Wagoner v. Ford Motor Co., Tenn. Ct. of App., July 28, 1945, unreported, noted in 19 Tenn. L. Rev. 800, reversed on another ground 183 Tenn. 392, 192 S. W. (2d) 840, 164 A. L. R. 364; Aurex Corp. v. Blair, Tenn. Ct. of App., Jan. 7, 1947, unreported, noted in 20 Tenn. L. Rev. 193; Wade, Book Review, 22 Tenn. L. Rev. 444, 447.

"The rule now, in our opinion, is that where a product is such that, if negligently made, it may reasonably be expected to injure the person or property of an ultimate user of it, then, irrespective of contract, the manufacturer is under a duty to such user to make it carefully. Grant v. Australian Knitting Mills, supra, 105 A. L. R. 1494; Carter v. Yardley Co., supra, 319 Mass. 92, 64 N. E. (2d) 693, 164 A. L. R. 563; Prosser on Torts, 673-678; Noel, Products Liability of a Manufacturer in Tennessee, 22 Tenn. L. Rev. 958, 988-89."

 Petitioner, through radio, television, and advertisements in magazines and newspapers, extols the virtues of its products. Surely it would not be contended that such advertisements and praise of General Motors' products were made for the benefit of its authorized dealers. These advertisements are made for the ultimate purchasers of General Motors' products who will use and drive them. They form a part of the warranty which General Motors gives the ultimate consumers.

Under Burkett v. Studebaker Bros. Mfg. Co., 126 Tenn. 467, 150 S. W. 421, the express warranty made by General Motors through its authorized dealer to plaintiffs, the ultimate purchasers and users of the automobile; and the Uniform Sales Act, T. C. A. sec. 47-1215; we hold there is no error in the judgment of the Circuit Court of Giles County.

The petition to rehear is denied at petitioner's cost. The judgment of this Court heretofore entered on the minutes of this Court will stand as entered.

Shriver, J., concurs.

Humphreys and Felts, JJ., not participating.