Donald W. BERRY, Plaintiff-Appellant,

v.

AMERICAN CYANAMID COMPANY (Lederle Laboratories, a division of American Cyanamid Company), Defendant-Appellee.

No. 15696.

United States Court of Appeals Sixth Circuit.

Feb. 2, 1965.

Argued by Lloyd S. Adams, Jr., Humboldt, Tenn., Adams & Adams, Humboldt, Tenn., on the brief, for appellant.

Argued by Newton P. Allen, Memphis, Tenn., Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., and James D. Senter, Jr., Senter & Senter, Humboldt, Tenn., on the brief, for appellee.

Before CECIL and PHILLIPS, Circuit Judges, and TAYLOR, District Judge.

CECIL, Circuit Judge.

This appeal presents questions of law concerning the sufficiency of the plaintiff-appellant's complaint in the District Court. Donald W. Berry, hereinafter referred to as plaintiff, brought this action in a state court of Tennessee to recover damages in the amount of $100,000 from the American Cyanamid Company, defendant-appellee herein. The defendant-appellee will be referred to hereinafter as Lederle, the familiar name of its laboratory division. Lederle removed the case to the United States District Court for the Western District of Tennessee, Eastern Division, on the ground of diversity of citizenship. (Section 1332, Title 28 U.S.C.)

The substance of plaintiff's claim is that he contracted paralytic poliomyelitis as a result of taking Sabin oral polio vaccine produced and marketed by Lederle, under the name of "Orimune." The vaccine was produced by Lederle and by it distributed to physicians in an original closed package to be administered to patients as a measure to prevent poliomyelitis. On August 22, 1962, the vaccine was administered to the plaintiff by his physician. About eight days later, within the incubation period for the disease, plaintiff became extremely ill with acute anterior poliomyelitis, which left him permanently partially paralyzed.

The complaint as amended contained five counts. The first count charged Lederle with common law negligence. The second count was framed under the doctrine of res ipsa loquitur. In this count it was charged that in the ordinary course of events the consumption of Lederle's drug "Orimune" would not cause the patient to contract polio, had Lederle exercised the high degree of care required of a manufacturer of drugs. The third count charged a breach of the implied warranty that the drug was free of any defect rendering it unmerchantable which would not be apparent on reasonable examination of the product. This count was based on the Uniform Sales of Goods Act, then in effect. (Formerly Section 47–1212 et seq. T.C.A.) [1] The fourth count was a common law count for a breach of the implied warranty that the product was reasonably fit for its intended purpose of immunization against contracting the disease commonly called polio.

By the fifth count the plaintiff pleaded breach of implied warranty under the Uniform Sales of Goods Act and also as a common law count. He further alleged in this count that the physician was but a conduit through which Lederle caused its product to reach the ultimate consumer and that the physician was in effect acting for and on behalf of Lederle under the circumstances. It was also alleged on behalf of plaintiff that Lederle consented to and created privity by placing its product in the stream of trade and commerce knowing that it could only

---

1. Now T.C.A. § 47–2–313 et seq. The Sales Act was repealed and replaced by the Uniform Commercial Code, effective July 1, 1964. Section 47–2–318 of this code enlarges the liability under implied warranty to extend to the members of the household of a purchaser, but it would not affect the rights and liabilities of the parties under the facts of this case.

reach the ultimate consumer through a physician; and that Lederle's arrangement for ultimately placing its product with a consumer satisfied any legal requirement of privity. It is obvious that this count was designed to bring the case within the rule of General Motors Corporation v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655. (Cert. den. unpublished.)

Counsel for Lederle moved to strike counts two, three, four and five. The trial judge sustained the motion to count two for the reason that he could not "say that there is any common experience or any ordinary course of events that teaches him that a person cannot contract polio from taking a polio vaccine, except for negligence on the part of the defendant manufacturer." The basis of the motion to dismiss the other three counts was that there was no privity of contract between the plaintiff and the defendant and that the Uniform Sales of Goods Act of Tennessee was not applicable in the absence of privity between the parties. The court sustained the motion to dismiss counts three, four and five, apparently, for these reasons. The plaintiff

was granted leave to dismiss the first count without prejudice. The entire action being thus dismissed, the plaintiff appealed.

The plaintiff presents two questions concerning the dismissal of counts three, four and five. 1. Was privity of contract between the parties an essential requirement of Tennessee law to state a good cause of action under the facts of this case? and, 2. Were the facts alleged in the complaint sufficient under Tennessee law to satisfy the requirement of privity? These two questions were discussed together by counsel in their briefs, because they both deal with privity of contract in breach of implied warranty actions. We will first take up the subject of privity as discussed under these two questions.

█ In general, the trend is away from the requirement of privity between vendor and vendee in products-liability cases.[2] This is more particularly true in cases involving foods and drugs.[3] This being a diversity of citizenship case, we are concerned with the law of Tennessee.

2. Middlleton v. United Aircraft Corp., 204 F.Supp. 856 (Admiralty, S.D.N.Y.1960); Picker X-Ray Corp. v. General Motors Corp., D.C.Mun.App., 185 A.2d 919 (1962); Hoskins v. Jackson Grain Co., Fla., 63 So.2d 514 (1953), but see Odum v. Gulf Tire and Supply Co., 196 F.Supp. 35 (N.D.Fla.1961); State Farm Mutual Auto. Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449 (1961); Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N. W.2d 873 (1958); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Greenberg v. Lorenz, 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961), and Delaney v. Towmotor Corp., 339 F.2d 4 (C.A.2, 1964); Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612, 75 A.L.R.2d 103 (1958), but see Miller v. Chrysler Corp., Ohio App., 183 N.E.2d 421 (1962); Thompson v. Reedman, 199 F.Supp. 120 (E.D.Pa.1961); and Putnam v. Erie City Mfg. Co., 338 F.2d 911 (C. A.5, 1964). See generally, Annotation, 75 A.L.R.2d 39. See also, Uniform Commercial Code, Section 2–318, now adopted in 26 states and the District of Columbia.

3. Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957); Gottsdanker v. Cutter Laboratories, 182 Cal.App.2d 602, 6 Cal.Rptr. 320, 79 A.L. R.2d 290 (1960); Florida Coca-Cola Bottling Co. v. Jordan, Fla., 62 So.2d 910 (1953); Rupp v. Norton Coca-Cola Bottling Co., 187 Kan. 390, 357 P.2d 802 (1960); Miller v. Louisiana Coca-Cola Bottling Co., Ltd., La.App., 70 So.2d 409 (1954); Manzoni v. Detroit Coca-Cola Bottling Co., 363 Mich. 235, 109 N.W.2d 918 (1961); Coca-Cola Bottling Co. v. Savage, 228 Miss. 612, 89 So.2d 634 (1956); Smith v. Ford Motor Company, Mo.App., 327 S.W.2d 535 (1959); Asher v. Coca Cola Bottling Co., 172 Neb. 855, 112 N.W.2d 252 (1961); Bowman Biscuit Co. of Texas v. Hines, Tex.Civ.App., 240 S.W.2d 467 (1951), but see 151 Tex. 370, 251 S.W.2d 153 (1952), where in this same case the Texas Supreme Court says that a wholesaler is not included under this exception; and Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 (1963). See also, Annotation, 79 A.L.R. 2d 301.

Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Counsel in his brief says, "There is no case dealing with drugs precisely in point." (In Tennessee.) We might add that we have found none in Tennessee dealing with breach of warranty in any other product that does not require privity between seller and purchaser.

■■ We must reject the argument that there was privity of contract between the plaintiff and Lederle. Privity of contract, as we understand it, is the relationship which subsists between two contracting parties. Clearly here, under the pleading, the plaintiff had no relationship with Lederle. He did not purchase the drug from Lederle. His only contact in the transaction was with his physician. The physician was not an agent of Lederle either in fact or by implication of law.

Counsel for plaintiff cites General Motors Corporation v. Dodson, supra, as being a key case in Tennessee on the subject of privity. In fact, this is the only Tennessee case cited in support of plaintiff's theory of privity of contract.

In the Dodson case, R. P. Dodson and his wife brought separate actions against General Motors Corporation for an alleged breach of warranty concerning a new Oldsmobile automobile purchased from Kemp Motor Company, an authorized General Motors dealer. The substance of the action was that the brakes were defective from the beginning. Mrs. Dodson was severely and permanently injured when the automobile plunged into a ditch as a result of the locking of the brakes. The cases were tried together to a jury and resulted in substantial verdicts for the plaintiffs.

On appeal the court found that General Motors gives the dealer a written express warranty and that it requires its dealers to give the ultimate purchaser the same identical express warranty. The court said at 338 S.W.2d 660:[4] "The booklet containing the warranty which the manufacturer gave its dealer; and the man-

ual which contained the warranty from the dealer to the ultimate consumer, were both prepared by General Motors and sent with the new automobile to the dealer. General Motors was dictating the two warranties completely: one from itself to the dealer, and one from the dealer to the purchaser or consumer. And, as stated, the two warranties were identical. The practical effect of this entire plan was that General Motors gave the warranty to the ultimate consumer; but for reasons satisfactory to itself, General Motors devised and put into operation the plan whereby General Motors dealt only with the dealers and never with the purchasers who were in fact the beneficiaries of the warranty. Defective parts or workmanship would only be discovered by the use of the automobile, and it was only used by the consumer." The court said at p. 661 that under these facts "the jury could have found that General Motors was the actual person or entity with whom plaintiffs were dealing, and Kemp was a conduit or subterfuge by which General Motors tried to exempt itself from liability to * * * the plaintiffs." The court said further that, if the plaintiffs were wrong about the application of the express warranty, they were correct in their contention that an implied warranty was created by the Uniform Sales of Goods Act, supra.

The court concluded that there was an express warranty and an implied warranty from General Motors to plaintiffs. The court held that the peculiar facts of this case supported the conclusion that the express warranty was between the manufacturer and the ultimate consumer.

On petition for rehearing, the court referred to the manufacturer's advertising through radio, television, magazines and newspapers in which it extolls the virtues of its products. It said at p. 665: "Surely it would not be contended that such advertisements and praise of General Motors' products were made for

4. General Motors Corp. v. Dodson, 47 Tenn.App. 438, 448, 338 S.W.2d 655, 660.

the benefit of its authorized dealers. These advertisements are made for the ultimate purchasers of General Motors' products who will use and drive them. They form a part of the warranty which General Motors gives the ultimate consumers."

■ The Dodson case decided two things: 1. Under the facts of the case there was an express warranty running from the manufacturer to the ultimate purchaser, and 2. An implied warranty was created by the Uniform Sales of Goods Act between the manufacturer and the ultimate consumer who was not the immediate vendee. The facts in the case before us do not support an express warranty and the theory of an implied warranty by statute was repudiated in Kyker v. General Motors Corporation, Tenn., 381 S.W.2d 884, Sept. 4, 1964.

In the Kyker case, the Supreme Court of Tennessee held that the Uniform Sales of Goods Act created an implied warranty only between vendor and vendee. At p. 886, the court said: "We do not think the provisions of the Uniform Sales of Goods Act were ever intended to, or should, define the rights, remedies and liabilities of a purchaser as against a manufacturer who is not his immediate vendor or a party to the contract of sale. The Uniform Sales of Goods Act is limited to delineating the principles governing the rights of the parties to the contracts of sale." Further, at p. 886, the court said: "The Act is couched in terms of 'buyer' and 'seller' and a fair reading of its provisions indicate clearly it is intended to apply to only transactions between vendor and vendee and should not extend to the relations between a manufacturer, not a vendor, and the consumer."

If the plaintiff's case is to be maintained on the theory of implied warranty, it must be upon the basis that Tennessee has joined those states that have abandoned the common law requirement of privity in products liability cases. We proceed to examine the Tennessee cases in this respect.

Lederle relies strongly on the Kyker case heretofore cited. This case is not specifically in point. Here an action was brought on behalf of R. A. Kyker, Jr., against General Motors Corporation and its dealer Sevier Motor Company as principal and agent. The action was for rescission of contract on the ground of breach of warranty, concerning a defective automobile purchased from the dealer. Relief was sought under the Sales Act for breach of express warranty (Formerly Sec. 47–1212 T.C.A.*), or under the statutory implied warranties of quality or fitness (Formerly Sec. 47–1215 T.C.A.**). The jury found in favor of the plaintiff and against General Motors but dismissed the dealer. The Court of Appeals reversed and granted judgment to General Motors. (Opinion not published.)

The Court of Appeals discussed the question of privity and held that the trial court should have directed a verdict in favor of General Motors, for the reason that there was no privity of contract between General Motors and the purchaser of the automobile. The court carefully reviewed legal articles and the cases in Tennessee and concluded that privity of contract between vendor and vendee is still a requirement in an action upon an express or implied contract in Tennessee.

While the Supreme Court of Tennessee affirmed the Court of Appeals, it did it on what it termed two peculiar aspects of the case, without discussing the general requirement of privity. The first ground of affirmance was the inapplicability of the Sales Act as heretofore stated. The second concerned the inconsistency of the verdict, not here applicable.

In Crigger v. Coca-Cola Bottling Company, 132 Tenn. 545, 179 S.W. 155, L.R.A.1916B, 877 (1915), the Supreme Court of Tennessee had before it the question

---

* Now T.C.A. § 47–2–313.

** Now T.C.A. §§ 47–1–205, 47–2–314, 47–2–315, 47–2–317.

of whether here was an implied warranty on the part of one who placed upon the market foods, drugs, beverages or medicines in bottles or sealed packages. It was held that there was no such implied warranty and that there was "no logical basis of liability for personal injury without some negligent act or omission." 179 S.W. at 157. The Court has never deviated from this rule. See also, Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200; Hoback v. Coca-Cola Bottling Works of Nashville, 20 Tenn.App. 280, 98 S.W.2d 113; Coca-Cola Bottling Works v. Kennedy, 13 Tenn.App. 199.

In Coca-Cola Bottling Company v. Rowland, 16 Tenn.App. 184, 66 S.W.2d 272, at p. 275, the court said: "There are cases from other jurisdictions and other authorities which hold that an implied warranty exists between the seller and buyer of articles manufactured for human consumption such as drugs, food, beverages, and commodities inherently dangerous. These cases are referred to in Crigger v. Coca-Cola Bottling Co., supra. However, that rule does not obtain in Tennessee, and the Tennessee cases proceed upon negligence as the basis for liability, and not upon an implied warranty."

■ We conclude that Tennessee has not abolished the requirement of privity under the facts of this case and that there was not privity of contract herein between plaintiff and Lederle. The district judge was not in error in dismissing counts three, four and five.

Another question presented is whether the second count of the complaint states a good cause of action under the doctrine of res ipsa loquitur. This count adopts from count one the charge that

the plaintiff's illness and permanent paralysis from polio was a "proximate result of the negligence of the defendant in failing to use the care and caution required of a drug manufacturer in the producing of its products."

■ The doctrine of res ipsa loquitur has been held to be applicable to products liability cases in Tennessee. Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200. The Court said at p. 416, 158 S.W.2d at p. 726: "It should be observed that we find no support for recognition of an inference, or presumption of negligence, and the shifting to the defendant of the obligation of disproving negligence, except in the principles of the doctrine of res ipsa loquitur. This doctrine was thus defined by Erle, J., in Scott v. London Docks Co., 2 H. & C. 596, in language that has been termed a 'legal classic':

"When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence [sometimes termed 'presumptive' or 'inferential' or 'circumstantial' evidence], in the absence of explanation by the defendant, that the accident arose from want of care." [5]

In this case the plaintiff, Sullivan, was injured through swallowing a piece of glass from drinking a bottle of Coca-Cola. He sued the bottling company rather than the dealer from whom he purchased the bottle of Coca-Cola. The Supreme Court held that the rule was applicable in this type of case but denied recovery for the reason that the evidence did not preclude the possibility of intermediate interference between the plaintiff and the bottling company.

5. For further discussion of the doctrine of res ipsa loquitur by the Tennessee courts see the following cases: Southeastern Aviation, Inc. v. Hurd, 209 Tenn. 639, 355 S.W.2d 436; Jones v. Mercer Pie Co., 187 Tenn. 322, 214 S.W.2d 46; Quinley v. Cocke et al., 183 Tenn. 428, 192 S.W.2d 992; Nashville Interurban Ry. et al. v. Gregory, 137 Tenn. 422, 193 S.W. 1053; Capitol Airlines, Inc. v. Barger, 47 Tenn.App. 636, 341 S.W.2d 579; Sullivan v. Crabtree, 36 Tenn.App. 469, 258 S.W.2d 782; Boykin v. Chase Bottling Works, 32 Tenn.App. 508, 222 S.W. 2d 889.

In the case before us we have a question of pleading. Whether the plaintiff, if the pleading is permitted to stand, will on trial be able to meet the rigid requirement of proof laid down by the Supreme Court in the Sullivan case is not now before us. (178 Tenn. 415, 158 S.W.2d 721.)

 Res ipsa loquitur is a rule of evidence. If applicable in this case, the plaintiff would make a prima facie case by introducing evidence that the taking of the vaccine caused the plaintiff to contract polio and that Lederle had exclusive control of the vaccine. The burden to proceed would then be upon Lederle to offer evidence on its behalf and in explanation of what caused the injury. However, the burden to prove negligence of Lederle by a preponderance of the evidence remains with the plaintiff.

In dismissing count two of the complaint, the trial judge did not challenge the doctrine of res ipsa loquitur or its application in a products liability case under proper circumstances. He dismissed it for the reason, as he stated, "This Court, who has to make this determination as a matter of law, cannot say that there is any common experience or any ordinary course of events that teaches him that a person cannot contract polio from taking a polio vaccine, except for negligence of the defendant manufacturer."

We agree with the trial judge that the doctrine of res ipsa loquitur is based on common or everyday experience. Boykin v. Chase Bottling Works, 32 Tenn.App. 508, 222 S.W.2d 889. The question presented by the dismissal of count two of the complaint is whether the trial judge was justified in saying there was no common experience relative to the use of polio vaccine.

It is a well known fact that during the early 1960s throughout the country and in the states of the Sixth Circuit a program was sponsored by physicians and health authorities advocating that everyone, children and adults, take Sabin oral polio vaccine. In many places mass production lines were set up by health authorities and the vaccine was administered without charge to those who availed themselves of the opportunity to take the vaccine. It was widely publicized that the disease of poliomyelitis could be virtually eliminated, if the mass of people, including children, would cooperate. It is now a known fact that the incidence of polio has been greatly reduced, if not almost entirely eliminated.

We are of the opinion that there is a common experience relative to the use of Sabin oral vaccine, as a result of the program of mass administrations of the drug, to which reference is hereinabove made. Evidence of this experience should be available in the health department of any large city.

We hereby remand the case to the District Court with instructions to take evidence on the experience in the use of Sabin oral polio vaccine and redetermine the validity of the second count of the complaint in the light of such evidence.

Judgment as to counts three, four and five is affirmed.