## CASSETTY v. MIXON et al.—245 S. W. (2d) 636.
### (two cases)

Middle Section.   June 29, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

P. J. Anderson and G. D. Anderson, both of Gaines-boro, for plaintiffs.

Goodpasture, Carpenter & Dale, of Nashville, H. B. McGinnes, of Carthage, and H. L. Page, of Gainesboro, for defendants.

HOWELL, J. These two cases, heard together, grew out of an explosion of a gasoline tank located upon the property of the plaintiff as a result of which plaintiff's five year old son was severely injured. Upon the close of plaintiff's proof in the Circuit Court of Jackson County the trial Judge granted a motion of the defendants to direct a verdict in their favor. After proper procedure the plaintiff has perfected an appeal in error to this Court and has assigned errors.

The questions presented by this record are whether or not the defendants were guilty of actionable negligence in leaving the intake pipe of the gas tank unlocked and in failing to remove the tank from the property of the plaintiff. The declaration had alleged that the broken cap of the intake pipe of the gasoline tank was in and of itself an attractive nuisance but this doctrine is not relied on here.

In 1946 or 1947, the plaintiff was operating a store upon a lot belonging to him in Jackson County and with

his permission and for his use, the defendants furnished and installed upon plaintiff's property the gasoline tank involved. The plaintiff purchased gasoline and had it placed in this tank for his own use and for sale to his customers until in February 1948 when his storehouse burned and then he used the tank until he leased another storehouse which had available gasoline tanks and in April or May 1949, he discontinued using this tank. Sometime after the tank was installed and in February 1948, the cap on the intake pipe was broken so that it could not be locked. Plaintiff testified that he had instructed a driver for the defendants to put a new cap on the tank but that he did not know whether or not a new one was put on. After the store burned the plaintiff used the tank and bought gasoline from other dealers, the Gulf Refining Company and L. B. McCloud. No gas was placed in the tank after August 1949.

After his store burned the plaintiff built a residence on the lot near the tank and moved his family into it. The five year old son of the plaintiff was playing near the tank in the yard of plaintiff's home and from some unknown cause the tank exploded and caused the injuries sued for.

Plaintiff testified that he told the defendants' agent several times to take the tank away. He testified in part:

"Q. I understood you to say that you first told them in April 1949 to take it out? A. I did tell 'em. I will explain why I told 'em, because they wouldn't keep me gas, when I needed it; that's exactly the reason I told 'em to take it out before that, then they would come back and put more in it. I wouldn't be there; I'd be at the mill.

"Q. You did tell 'em to take it out? A. Yes, sir, I told 'em to take it out.

"Q. You didn't tell 'em to take it out because you didn't need it? A. No, sir, I didn't need it.

"Q. Which was it, Mr. Cassetty? A. I didn't need it. Man couldn't keep you in gas when you needed it, you didn't need it.

"Q. That's the reason? A. That's the reason.

"Q. You just sorter quit everything? A. They never refused to get their money, anybody else I ever owed.

"Q. Now, then you said you told Mr. Maggart? A. I did.

"Q. When did you tell him? A. I told him in about the same way, I told 'em if he didn't mean to keep me gas to take it out.

"Q. When was that? A. That was from April on up to June.

"Q. You said you told him one time? A. Yes, one time.

"Q. Now when was that? A. I can't recall just the exact date.

"Q. You don't know whether it was April 1949 or August 1949? A. Well, now I couldn't say.

"Q. Just one time you told him? A. Yes, sir.

"Q. That's because you couldn't get gas in time? A. Well, one reason, yes sir.

"Q. Sir? A. That was one reason, yes sir.

"Q. Any other reason? A. I don't recall any other reason.

"Q. Sir? A. I said, No, sir."

The plaintiff had emptied all the gas that the pumps would remove from the tank. After the accident the plaintiff pulled the tank partially out of the ground and poured out the four or five gallons of gas remaining in it. The plaintiff purchased the gasoline as above stated and it belonged to him.

█ The defendants had nothing to do with removing the gasoline from the tank. The plaintiff knew well the danger of an explosion of gasoline. He alleged in the declaration that ''gasoline is known and recognized as highly volatile, gaseous and dangerously explosive and an extraordinary degree of care is required in its handling''. He also knew that the cap on the tank was broken and that his child played in the yard.

There is no proof that any of the defendants knew that there was any gasoline remaining in the tank.

We cannot say that there is any evidence of negligence on the part of the defendants or any breach of a duty owing by them to the plaintiff.

The act of the plaintiff in allowing the tank with a broken cap and with some gasoline still in it to remain as it was in his yard where he knew this small child played, was the negligence which was responsible for the accident. There was no proof as to what caused the gasoline vapors to explode.

█ If it was an act of omission on the part of the defendants in not removing the tank, then it was such an act that could not have reasonably anticipated or foreseen the injury complained of.

In the case of Stafford v. Consolidated Bus Lines, Inc., 179 Tenn. 185, 164 S. W. (2d) 15, 17, it is said:

''The trial court, however, directed a verdict in favor of defendant upon the ground that the accident was proximately caused by the independent act of the plaintiff in running out from back behind the bus into the highway in front of the approaching automobile, and that such act on her part was an independent and intervening cause from any act of negligence imputed to defendant, her injury being one which defendant could not reasonably foresee or anticipate.

"Upon this latter proposition the Court of Appeals reversed the trial court and remanded the case for a new trial, holding that to be a question for determination by the jury.

"We think the Court of Appeals was in error. The facts are few, simple and uncontroverted, and present a situation as to which reasonable minds could not differ.

"In Nashville, C. & St. L. Ry. v. Harrell, 21 Tenn. App. 353, 363, 110 S. W. (2d) 1032, 1038 (petition for writ of certiorari denied by this court), it was said:

" 'And the intervening act of a child may be the responsible cause of his own injuries, although the child could not be held guilty of contributory negligence. 22 R. C. L., pp. 140, 141, § 25; note, 23 L. R. A., N. S., p. 251.

" 'It was also held in Chattanooga, etc., Co. v. Hodges, supra [109 Tenn. 331, 70 S. W. 616, 60 L. R. A. 459, 97 Am. St. Rep. 844], that, although ordinarily a question for the jury, 'where the facts are fairly incontrovertible the question of proximate or intervening cause is for the court'; and it was so held in the later case of Moody v. Gulf Refining Co., 142 Tenn. 280, 290, 293, 294, 218 S. W. 817, 8 A. L. R. 1243.

\*         \*         \*         \*         \*         \*

"In Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 820, 8 A. L. R. 1243, defendant's servants had spilled gasoline on the ground which was ignited with matches by several small boys causing a fire that destroyed the property of plaintiffs. In the opinion the court points out that under the general rule the proximate cause of the injury is a question for the jury, but that where the facts are undisputed and are susceptible of but one inference, the question is one of law for the court. After reviewing the authorities, in affirming the judg-

ment of the trial court in directing a verdict for defendant, the court said:

" 'But, even if it be conceded that the defendant was guilty of negligence in the manner in which it kept its premises and the manner in which it was unloading the gasoline in question, still we are of the opinion that such negligence was not the direct and proximate cause of the fire which destroyed the property of plaintiffs, but that said fire was the direct and proximate result of the independent intervening act of the boys in throwing lighted matches into the gasoline during the absence of defendant's employé, and that this act on the part of said boys was not such as could have been reasonably anticipated by defendant's employé.' "

Also in the case of Nichols v. Nashville Housing Authority, 187 Tenn. 683, 216 S. W. (2d) 694, 695, the Supreme Court said: "The well established rule is that a recovery will not be allowed when the negligence of the sole beneficiary thereof proximately contributed to the death for which the recovery is sought. Bamberger v. Citizens' Street R. Co., 95 Tenn. 18, 31 S. W. 163, 28 L. R. A. 486, 49 Am. St. Rep. 909, is probably our most referred to case in other jurisdictions in discussions of this generally recognized rule."

In this case there is no evidence as to what caused the explosion. The facts being that the defendants seem to be the owners of the tank itself and let it remain on plaintiff's property, and had no notice that any gasoline was in the tank and no knowledge that plaintiff's child was permitted to play near the tank, we cannot say that there was any neglect of any duty by the defendants. We find no proof of any actionable negligence on the part of the defendants.

The assignments of error are therefore overruled and the judgment of the trial court is affirmed.

The plaintiff will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.